STATE, Respondent, vs. WAGNER, Appellant. (WILLIAM COCHRANE CASE.)

*January 15—February 10, 1942.*

The cause was submitted for the appellant on the brief of *Frank E. Hebert* of Tomahawk, and for the respondent on the brief of the *Attorney General, William A. Platz,* assistant attorney general, and *Donald Schnabel,* district attorney of Lincoln county.

FAIRCHILD, J.   Defendant and Mae Wilson, one of the victims of defendant's assault, had lived together in Illinois for several years until March, 1941.   It seems clear from the evidence that the parties were never married.   In March, 1941, Mae Wilson left defendant and came to Wisconsin.   Defendant was finally successful in his attempts to locate her, and on July 10, 1941, having learned that she was somewhere in Langlade county, Wisconsin, he hired a taxicab in Chicago and drove to her address; there he learned that she had again moved, and after tracing her to two other addresses he finally found out that she was then at the Evergreen Inn in Lincoln county.   His Chicago driver refusing to take him farther, defendant hired a cab at Marinette to take him to the Evergreen Inn, where he arrived about 9 the next morning.   The cabdriver and his wife, who had accompanied them on the trip, waited outside the inn for defendant until they heard loud voices and several shots; then they left.

The evidence on behalf of the prosecution was to the effect that upon entering the inn, defendant inquired whether his wife was there, and when the bartender replied in the negative, defendant drew a gun, pointed it at the bartender and

demanded to be taken upstairs. After looking in several rooms they came to one in which Mae Wilson and William Cochrane were sleeping together. Holding the gun in his right hand, defendant lightly struck Mae Wilson with his left hand; both Wilson and Cochrane then awoke. Defendant claimed that Mae Wilson was his wife, and when she denied this statement defendant fired several shots, wounding both Mae Wilson and Cochrane in the legs. The bartender seized defendant, who dropped his gun and fled.

Defendant stated that when he arrived at the inn, the bartender, Lucenta, opened the door for him and he asked for Mae Wilson. Lucenta said that they were sleeping, and offered to take defendant upstairs to the room. Defendant claims that he walked ahead of Lucenta, and that when he entered the room, William Cochrane and Mae Wilson were in bed completely disrobed. He reached for Mae's arm, Lucenta hit him, and a fight started. Two other men came into the room armed with guns, and Lucenta yelled to them to shoot defendant. Shots were fired, and Mae Wilson and Cochrane were hit. There is no question but that Wilson and Cochrane were struck in the leg with bullets.

There is no difficulty in arriving at the conclusion that under the evidence the jury might have found defendant guilty of the most serious charge against him, and that they were fully warranted in sustaining the charge upon which he was convicted. The shooting under all the circumstances could be believed by the jury—in fact it would be difficult not to believe—to constitute an assault with a murderous intent or assault with intent to do great bodily harm. *Birker v. State* (1903), 118 Wis. 108, 94 N. W. 643. There were ample reasons for the jury to prefer the state's evidence to that of defendant.

Against this background, appellant placed many claims of error, variant aspects, however, of the general claim that the defendant did not have a fair and impartial trial.

First is the contention that the form of the verdict was improper. The form submitted on each of the three counts concluded in the following language: "We find the defendant ——." Counsel concedes that any prejudice in this respect was covered by proper instructions to the jury, but he contends that the form submitted confused the jury, leading it to believe that it must find the defendant guilty on some charge. This contention cannot be sustained for reasons relied on in the decision of this court in the case of *Siegel v. State* (1930), 201 Wis. 12, 14, 15, 229 N. W. 44, wherein the court stated:

"In view of the careful explanation by the court in its instructions to the jury as to the purpose of the blank spaces preceding the word 'guilty' in the form for the verdict, and that the jury was to write in the word 'not' in such of those spaces as to which they had any reasonable doubt of the guilt of the defendant named, and also the care exercised by the court in receiving the verdict and not accepting it until the jurors replied, in answer to the judge's inquiry, that they found each defendant guilty as to each count, there was no error in submitting that form for verdict. There is no occasion to believe that any defendant was prejudiced by the court's failure to also prepare additional sets of forms with the words 'not guilty' inserted by the court as to each of the defendants, and as to each count."

The argument that the defendant was either guilty of the crime of assault with a deadly weapon with intent to murder or not guilty at all, and that the questions as to guilt upon the lower forms of assault should not have been submitted to the jury, is based upon the theory that by virtue of the provisions of sec. 340.40, Stats., defining assault with intent to murder or rob while armed with a dangerous weapon, lower forms of assault while so armed are excluded, or, as counsel puts it, "there is no such offense as assault with a deadly weapon with intent to do great bodily harm."

The propriety of submitting the lower forms of assault appears from the language of sec. 357.10, Stats., relating to trials of criminal cases and providing:

"357.10 *Conviction of assault when intent not found.* In all cases of indictment or information in the circuit court for assault with intent to commit any felony it may be lawful for the jury, in case they do not find the felonious intent charged, to convict of the assault. . . ."

The very statement of counsel's argument reveals its weakness. That being armed with a dangerous weapon is an essential element of the greater crime by no means shows a legislative purpose that a lower form of assault while so armed is not to be punishable; in other words, being armed is an essential element of the one crime but its presence or absence is immaterial to the other forms of assault charged in this case. *Birker v. State, supra.*

In respect to the claim of error regarding the receipt of evidence, it is contended that state's Exhibit A, a .32 automatic, claimed to have been used by the defendant in firing the shots, was not properly identified. Although the witnesses present at the scene of the shooting did not directly identify the gun as being the one used by defendant, there was testimony that after the scuffle defendant dropped the gun in the very room where the shots were fired, and that the gun was left there until picked up by Dr. McCormick, called in to attend the wounded, who placed it on a chiffonier in the same room. There it was picked up by the sheriff in the presence of the doctor and the injured persons; and no other gun was found in the room by the sheriff. The identification of the gun as that belonging to defendant was therefore properly left to the jury to determine.

Much the same line of reasoning applies to the point raised regarding the reception in evidence of the exploded shells found in the room where the event took place.

Empty envelopes addressed to Mae Wilson were admitted in evidence; these envelopes were offered for the purpose of refuting defendant's claim that Mae Wilson was his wife. It is difficult to see in what manner the receipt of these envelopes could have operated to the prejudice of defendant. The court refused to permit the introduction of the contents of the letters contained in the envelopes as well as the contents of letters written by defendant to Mae Wilson, but appellant objects to speculations made as to these contents by the district attorney, who said to the jury:

"It is really laughable about all of these letters that he wrote to this woman. This man says, in those letters he asked Eileen [Mae Wilson] to return to Chicago and to write to him. Counsel repeatedly says the defendant loved this woman, it is regrettable that the contents of these letters are not before you."

The court thereupon admonished the jury not to speculate upon the contents of the letters. Defendant himself, moreover, had testified regarding the general contents of the letters he had written to Mae Wilson.

The question as to nationality can hardly be said to constitute reversible error, as contended by appellant, in the absence of a showing, unless the matter be such that it may be taken into account as a matter of judicial notice, that defendant's particular nationality is a subject of prejudice to the jury. No such showing was made or even attempted to be made in this case to warrant the belief that defendant's nationality is an object of prejudice in this state.

It is claimed that defendant did not have a fair and impartial trial because of improper remarks of the district attorney and inferences drawn from the evidence by him. The first objection is aimed at the effort of the district attorney to question the sheriff regarding attempts made by defendant to remove Mae Wilson from the hospital. The court in-

structed the jury to disregard that question and to draw no inferences therefrom. This ruling was more than favorable to defendant and cannot be held to be prejudicial. The second objection is directed to statements and inferences regarding the defendant, specifically: "Now this man is a clever criminal, and what his purpose was when he said he wanted to call the sheriff, you will have to put yourself in defendant's position. I think, perhaps, he was just clever enough to think he was getting himself in the clear. . . . I do not know what he might do, he is a clever criminal. He comes here from Chicago to beat the rap." The evidence adduced made this a matter peculiarly within the discretion of the trial court. In view of the action taken by the court in effect instructing the jury to disregard these remarks, any error in this respect, if error there was, cannot constitute sufficient grounds for a reversal. Language of a district attorney may be subject to criticism and yet not constitute reversible error. *Vogel v. State* (1909), 138 Wis. 315, 119 N. W. 190.

Under the circumstances of the case, it is concluded that the verdict of the jury is supported by the overwhelming weight of the evidence, and that the record reveals no errors in rulings or instructions sufficient to justify a reversal.

*By the Court.*—Judgment affirmed.