STATE, Respondent, vs. VINSON, Appellant.*

*February 11—March 8, 1955.*

* Motion for rehearing denied, without costs, on May 3, 1955.

306

For the appellant there were briefs by *Max Raskin* of Milwaukee, and *David Rabinovitz* of Sheboygan, attorneys, and *William F. Quick* of Milwaukee of counsel, and oral argument by *Mr. Rabinovitz* and *Mr. Quick*.

For the respondent there was a brief by the *Attorney General* and *William A. Platz*, assistant attorney general, and oral argument by *Mr. Platz*.

BROWN, J.   These facts are admitted: The appellant, Vinson, was a patron of a tavern on the evening of June 18, 1954, a time when employees of the Kohler Company were on strike. Vinson was not an employee. He came from the tavern washroom into the barroom and heard Van Ouwerkerk say to his wife: "This is not the place for us, there

are too many union people in here." Mr. and Mrs. Van Ouwerkerk then prepared to leave the place. Vinson did not know them but he was angered by the remark. He seized Van Ouwerkerk from behind, turned him around and struck him, knocking him down. As Van Ouwerkerk lay on the floor, offering no resistance, Vinson commenced kicking him and continued to do so until a striker, Gordon Billman, jumped off his stool at the bar and pushed Vinson away, saying: "Leave him alone, you want to kill him?" Vinson then desisted with the remark: "He is a ———— scab." Van Ouwerkerk was a small man, forty-nine years old, who weighed about 121 pounds. Vinson was six feet three inches tall, weighed 240 pounds, and was twenty-seven years old. There was some evidence that Vinson stamped on Van Ouwerkerk as the latter lay on the floor. Vinson denied this but did not deny the kicking.

Van Ouwerkerk was taken home and received medical attention. The physician who was called to his home that night testified that Van Ouwerkerk was coughing up blood and blood-covered sputum. On June 20th Van Ouwerkerk's condition was worse and the doctor arranged for him to go to a hospital where, on June 21st, Van Ouwerkerk's chest was tapped and approximately a pint of bloody fluid was removed from the pleural cavity. This operation was repeated on June 23d and also on the 26th, 29th, and 30th. On June 23d a blood transfusion was given him. X rays showed that Van Ouwerkerk had sustained fractures of four ribs. The attending physician testified that the fluid in the chest was caused by an injury which made the treatment at the hospital necessary. Van Ouwerkerk was hospitalized for twenty-two days.

Vinson has appealed from the judgment. He asks that it be reversed and he discharged or that a new trial be granted him. His motion after verdict for a new trial was presented in the following words:

"Mr. Quick: If the court please, I think that perhaps the best way to proceed at this time is merely to give our reason for the request for a new trial, that is short and simple: We do not believe the state has proved an intent to do great bodily harm.

"Court: The motion is denied."

Appellant's original appeal brief states that this alleged failure of proof is one of the two questions which are before this court on the appeal. Having been first presented to the trial court in the motion for a new trial, it is undoubtedly a question now before us. In the same brief appellant asserts that another question is raised by the appeal, namely, that the trial court erred in not including in the verdict a question which would permit the jury to find Vinson guilty of assault and battery. In his reply brief he raises the additional points of law (1) that it was error for the court to include in the verdict a question whether Vinson was guilty of a "simple assault" and (2) that there were errors in several of the court's instructions to the jury. To entitle an appellant to present to the appellate court such matters as alleged errors in the charge to the jury or in the verdict submitted to the jury, the allegations of error must first be presented for the consideration of the trial court in the motion for a new trial. *Ferry v. State* (1954), 266 Wis. 508, 510, 511, 63 N. W. (2d) 741.

Appellant's motion presented to the trial court only the question of whether the state had succeeded in proving beyond a reasonable doubt that, in assaulting Van Ouwerkerk, Vinson had the intent to do great bodily harm; and that is the only question with which, for the reasons given in *Ferry v. State, supra,* we will deal.

The information against Vinson charges him with a violation of sec. 340.41, Stats., which declares that "Any person

who shall assault another with intent to do great bodily harm shall be punished . . ." in the manner provided. Such an assault constitutes a felony and the specific intent to do great bodily harm is an essential element of the crime charged. Where the intent is an essential element the burden is on the prosecution to prove that the accused had such an intent, or to show facts from which it may be presumed. 22 C. J. S., Criminal Law, p. 883, sec. 568.

In *State v. Kuenzli* (1932), 208 Wis. 340, 242 N. W. 147, we had an embezzlement case in which it was necessary to prove a fraudulent intent as an essential element of the crime. The appellant contended that the intent was not proved. Justice WICKHEM said (p. 347) :

". . . intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it. The jury was under no obligation to accept the direct evidence of intent furnished by the defendant, and must be permitted to infer intent from such of defendant's acts as objectively evidence his state of mind."

The violence of Vinson's attack on Van Ouwerkerk, the continuation of the attack by kicking while Van Ouwerkerk lay helpless on the floor, the serious injuries which Vinson inflicted, the disproportion in the size and age of the two men, which removed fear of personal danger to Vinson from reprisal by Van Ouwerkerk, are matters of evidence which the jury was entitled to consider when reaching a conclusion concerning Vinson's state of mind while he carried on the assault. It is quite impossible to conclude under such circumstances that in so doing Vinson lacked an intent to hurt Van Ouwerkerk and hurt him badly. Contrary to appellant's contention, the evidence, and the inferences from it which it was the province of the jury to draw, established beyond a reasonable doubt that the assault was made by Vinson with

the intent to inflict great bodily harm on Van Ouwerkerk.

*By the Court.*—Judgment affirmed.

CURRIE, J., took no part.

The following opinion was filed May 3, 1955:

BROWN, J. (*on motion for rehearing*). Appellant has moved to review our decision and calls to our attention our statement which appears in the reported case, ante, p. 309, to wit:

"To entitle an appellant to present to the appellate court such matters as alleged errors in the charge to the jury or in the verdict submitted to the jury, the allegations of error must first be presented for the consideration of the trial court in the motion for a new trial." (Citing case.)

Appellant contends that the words "in the motion for a new trial" carry the statement farther than is warranted by several of our recent decisions. We agree that they should have been omitted. However, counsel did move for a new trial and, at that time, said: ". . . our reason for the request for a new trial, . . . is short and simple: We do not believe the state has proved an intent to do great bodily harm." This statement effectually withdrew from the trial court's consideration all questions, whether or not previously raised, except the sufficiency of the evidence, and that we discussed at length in our opinion. Counsel may not induce the trial court to pass on only one objection and then raise others when an appeal brings the case here. We consider that such other alleged errors were waived.

The principal contention in the motion for rehearing is that under the circumstances of this case we should exercise our powers of discretionary reversal, sec. 251.09, Stats., and

order a new trial in the interests of justice. Both in his original brief and in the one on this motion, appellant avers: "We cannot believe that the judicial traditions of our country contemplate the denial of substantial justice by narrow interpretation of technical trial procedure," together with other statements of similar purport. The technical points had received our consideration but, very likely carried away by counsel's rhetoric, we took too seriously the exhortation to ignore them and thus omitted from the opinion all discussion of the technical points to which appellant now turns. It may well be that the interests of justice would have been better served if we had told why there is no merit in them. Appellant asked us to consider:

(1) The court erred in not including in the verdict a question on assault and battery.

Counsel frankly concede that they have found no authority for this demand. We do not consider the omission of that question error and it certainly was not prejudicial to appellant. Indeed, if the evidence did not establish intent to do great bodily harm, it was to his advantage that the jury must acquit him for lack of question on such lesser offense on which he might be found guilty.

(2) The trial court erred in submitting the question: "We . . . find the defendant guilty of *simple assault*."

When the court was preparing the verdict appellant's counsel said: "The defendant requests at this time that the court submit the verdict of *simple assault* to the jury." Appellant cannot complain now that the court granted the request. Moreover, while the term is not found in the statutes dealing with assault without intent, "simple assault" has been used in lieu of the statutory language by judges and lawyers too often and too long for us now to consider it prejudicial in a verdict when accompanied by adequate instructions, as it was here. See headnote 1 in *State v. Wagner*, 239 Wis. 634,

2 N. W. (2d) 229; *Vosburgh v. State,* 82 Wis. 168, 171, 51 N. W. 1092 ("an assault without the intent is a simple assault"); *Birker v. State,* 118 Wis. 108, 110, 94 N. W. 643, citing *Kilkelly v. State,* 43 Wis. 604, 608 (" '. . . the plaintiff in error may lawfully be convicted either of an assault with the felonious intent charged, or of a simple assault and battery, or of a mere assault.' ")

(3) The trial court erred in instructing:

"The crime of simple assault which is included in the offense charged in the information against the defendant as a lesser charge, that is the assault only, without the specific intent to do great bodily harm, is defined in section 340.72 of the Wisconsin statutes, the pertinent portion of which reads as follows: 'Any person who shall assault another shall be punished' etc. It will not be necessary for me to define assault for you again as I have fully explained its necessary ingredients in connection with my instructions on assault with intent to do great bodily harm."

Appellant complains because the court did not read to the jury the full text of the section. The omitted parts concern a person who shall assault another when not excusable or justifiable, or who shall use in reference to and in the presence of another, or in reference to and in the presence of any member of his family, abusive or obscene language, intended or naturally tending to provoke an assault or any breach of the peace. There is no evidence of any abusive or obscene language used by Ouwerkerk at any time and in the second paragraph of their principal brief appellant's counsel, referring to their client, state: "He has never attempted, and does not now attempt to justify or excuse the assault and battery." In view of such concession and such lack of evidence the omitted portions of the statute have no application to the case at bar and were properly omitted from the charge to the jury.

(4) Appellant says that the climax of the court's prejudicial and erroneous instructions was found in the following which, in effect, he claims directed a verdict of guilty against him. "Self-defense is not involved in this case. The assault in this case was neither justifiable nor excusable." Having conceded that the assault was neither justifiable nor excusable, appellant has no standing now to say that the court prejudiced him by so stating. If this, as appellant contends, is equivalent to a directed verdict of guilty when repeated by the court, his own admission of it must be the equivalent of a plea of guilty.

(5) The court erred in the following instruction:

"When one person assaults another in such a manner that it is likely to inflict great bodily harm, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that great bodily harm was intended and such assault would be assault with intent to do great bodily harm."

Appellant submits that the instruction erroneously removes the presumption of innocence which attends a defendant. The trial court instructed carefully on the presumption of innocence. The instruction of which appellant complains does no more than inform the jury of the well-known rule that one is presumed to intend the natural and reasonable consequences of his acts but that the presumption may be rebutted.

"It is a general rule, applicable in all criminal cases, including those where a specific intent is an element of the crime, that accused, if sane, is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary acts, knowingly performed. . . ." 22 C. J. S., Criminal Law, p. 93, sec. 35.

". . . there are certain presumptions which react against accused, such as the presumption of sanity, considered below in sec. 584, of knowledge of the law, see infra sec. 586, *and that a person intends the natural and reasonable consequences*

*of his acts, . . .*" 22 C. J. S., Criminal Law, p. 893, sec. 579. (Italics ours.)

Finally, appellant returns to his original and principal contention,—that we ought to exercise our right of discretionary reversal under sec. 251.09, Stats., and, ignoring the technicalities of the law, take note of the entire situation and the emotional tension in which the trial was had, and order a new trial in the interests of justice. "Projected against the background of emotional tension, created by the vicious publicity of advertisements, editorials, and newspaper items," counsel say, "any error, however slight, was magnified a hundredfold." This, of course, is argumentation based on emotion rather than evidence. It is not always easy to connect counsels' argument with the record because, in violation of the court rules relative to appeals, they have not supplied an appendix nor an exhibit index. Our own search of the record reveals nothing improper during the trial in the presence of the jury upon which we would be justified in concluding that appellant's rights had been prejudiced. Certainly tension or prejudice is not necessary to explain the verdict; the evidence, alone, does that. Looking at the situation in its broader aspects, as counsel invite us to do, we find it undisputed that Vinson, who was not a striker, overheard part of a conversation between a husband and wife. Though the husband, a worker, was about half Vinson's size and twice his age, without justification or excuse, as his own counsel wisely admit, Vinson thereupon viciously attacked the speaker from the rear, knocked him down and then proceeded to kick his ribs in until, mouthing obscenities, Vinson was forced away by a bystander. The interests of justice do not appear to us to require our intercession in his behalf.

*By the Court.*—Motion denied.

CURRIE, J., took no part.