Virgil KALCHTHALER and Morningside Terrace, Inc.,
Plaintiffs,

v.

KELLER CONSTRUCTION COMPANY, Wolterstorff
Architects, Inc., P.A., and Security Insurance Company of Hartford, Defendants-Respondents,

AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant,

MIKE KOENIG CONSTRUCTION, Secura Insurance Company, Windsor Window Company, a division of W.
Window Company and Maryland Insurance Company,
Defendants. [Case No. 97–2198]

Virgil KALCHTHALER and Morningside Terrace, Inc.,
Plaintiffs,

v.

KELLER CONSTRUCTION COMPANY, Defendant-Respondent,

WOLTERSTORFF ARCHITECTS, INC., P.A., and Security
Insurance Company of Hartford, Defendants,

AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant,

MIKE KOENIG CONSTRUCTION, Secura Insurance Company, Windsor Window Company, a division of W.
Window Company and Maryland Insurance Company,
Defendants. [Case No. 98–0258]

Court of Appeals

*Nos. 97–2198, 98–0258. Oral argument November 10, 1998.—Decided January 13, 1999.*

(Also reported in 591 N.W.2d 169.)

On behalf of the defendant-appellant Aetna Casualty & Surety Company, the cause was submitted on the briefs of *John D. Bird, Jr.* and *Kathryn M. Corsmeier* of *Bird, Martin & Salomon, S.C.* of Milwaukee. There was oral argument by *John D. Bird, Jr.*

On behalf of the defendant-respondent Keller Construction Company, the cause was submitted on the briefs of *Linda S. Isnard, David J. Nolden* and *Gilbert J. Berthelsen* of *Capwell & Berthelsen* of Racine.

On behalf of the defendants-respondents Wolterstorff Architects, Inc., P.A., and Security Insurance Company of Hartford, there were briefs and oral argument by *James L. Kirschnik* of *Law Offices of James L. Kirschnik, S.C.* of Brookfield.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. This case demands our interpretation of a new exception to the business risk exclusion in a standard form commercial general liability (CGL) insurance policy. In the standard policy, there is an exclusion barring coverage of property damage arising out of the completed work of the insured. An exception to this exclusion was added to standard form CGL poli-

cies in 1986, stating that the exclusion does not apply to work done by subcontractors of the insured. The only reasonable reading of this exception is that it restores coverage for damage to completed work caused by the work of a subcontractor. We thus affirm the circuit court's holding that the damage in this case was covered.

Keller Construction Company (Keller) was the general contractor on a project to construct a residential facility for the elderly, Morningside Terrace, Inc. (Morningside). Keller contracted out all the work to subcontractors. The project was completed in August 1989.

The building leaked, causing water damage to the interior. Repair costs were $534,770.68. Virgil Kalchthaler, a co-owner of Morningside, along with Morningside itself, sued Wolterstorff Architects, Inc., P.A. (WAI) and its insurer, Security Insurance Company of Hartford (Security); Keller and its insurer, Aetna Casualty & Surety Company (Aetna); and several of Keller's subcontractors and their respective insurers. Aetna, Keller's insurer, disputed its duty to defend. The circuit court found that Aetna did have a duty to defend but that it had not breached that duty. Prior to trial, all of the defendants except Keller and Aetna entered into settlements with Morningside. As a result, Morningside's claims against Keller and Aetna were assigned to WAI and Security (hereinafter referred to collectively as WAI), and all cross-claims between WAI and the subcontractors were dismissed. The remaining claims, then, were by WAI against Keller and Aetna. Keller then entered into a *Loy*[1] covenant not to sue, paying WAI $31,500 in exchange for release

[1] *See Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982).

from its claims. Under the agreement, WAI reserved all rights against Aetna for any covered claims asserted against Keller. The only remaining issue was whether the damage to the building and its interior was covered by Keller's Aetna policy. The parties submitted this issue to the circuit court, stipulating to all the relevant facts.[2]

The circuit court found that there was coverage for the claims under the Aetna policy. First, it found that the general grant of coverage included damage caused by water leaking through windows. It then turned to the exclusions. The work product exclusion, which bars coverage for repairs or restoration due to faulty workmanship, did not apply because it included an exception for completed work. A second exclusion of the insured's work, however, did include completed work. But that exclusion contained additional language stating that the exclusion did not apply to work performed by a subcontractor. The circuit court, relying on *O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99 (Minn. App. 1996), found that this exception applied in this case, stating that "[t]he person who acquired this insurance policy with the product-completed operations hazard provisions would reasonably expect coverage in such a situation." The circuit court ordered judgment entered in favor of WAI for $267,135.34.[3] Aetna appeals.

---

[2] Among those facts stipulated to was that a jury would have allocated 50% of the responsibility for the damages to Keller based on "[v]icarious responsibility for negligent performance of one or more of its subcontractors" and "[n]egligent supervision of the work of its subcontractors." Thus, the amount in dispute was $267,385.34.

[3] The circuit court's original decision was that judgment be entered for $267,385.34. In an amended judgment the total

*Standard of Review*

 The interpretation of an insurance policy is a question of contract law we review without deference to the circuit court. *See Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 382, 480 N.W.2d 1, 3 (1992). The language in an insurance contract should be given its ordinary meaning—the meaning a reasonable person in the position of the insured would give the terms. *See Grotelueschen v. American Family Mut. Ins. Co.*, 171 Wis. 2d 437, 447, 492 N.W.2d 131, 134 (1992) (noting that unambiguous terms are given meaning they would have to an insured lay person); *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 487, 326 N.W.2d 727, 740 (1982) ("Wisconsin law has long maintained that an insurance policy should be construed as it is understood by a reasonable person in the position of the insured."). A term is ambiguous if it is susceptible to more than one reasonable interpretation by an insured. *See Cardinal*, 166 Wis. 2d at 383, 480 N.W.2d at 4. If the policy terms are unambiguous, we merely apply them to the facts. *See Grotelueschen*, 171 Wis. 2d at 447, 492 N.W.2d at 134. When an ambiguity exists, it should be construed to afford coverage. *See Cardinal*, 166 Wis. 2d at 382, 480 N.W.2d at 3. Finally, exclusions should be narrowly construed against the insurer. *See id.*

---

award was $267,135.34. There is no explanation of the $250 discrepancy and the parties have not addressed this. Therefore, we construe the parties' arguments to refer to the amended judgment and affirm that amount.

## Discussion

The parties dispute coverage in light of three different sections of the policy. We include the sections at issue and then recount the competing theories of coverage. The policy language pertinent to this appeal is:

**1. Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" . . . .

. . . .

**2. Exclusions**

This insurance does not apply to:

. . . .

h. "Property damage" to:

. . . .

(6) That particular part of any property:

. . .

(b) that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

Paragraph (6)(b) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

. . . .

j. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to . . . harmful conditions." Further, " '[p]roperty damage' means . . . [p]hysical injury to tangible property . . . ." Finally, " '[p]roducts-completed operations hazard' [PCOH] includes all . . . 'property damage' occurring away from premises you own or rent and arising out of . . . 'your work' " on work that has already been completed. Here, there is no dispute that construction had been completed when the damage occurred.

██

Aetna begins by arguing that there is no need to examine the exclusions in the policy because there is no grant of coverage in the first place. Under the policy, Aetna agrees to pay sums that the insured becomes obligated to pay as damages because of property damage "to which this insurance applies." The policy applies only if the damage is caused by an "occurrence" that takes place in the "coverage territory" and during the policy period.[4] Under well-established case law, a CGL policy does not cover faulty workmanship, only faulty workmanship that causes damage to other property. *See Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 265, 371 N.W.2d 392, 395 (Ct. App. 1985) ("The policy in question . . . does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident."). Aetna also cites cases from other jurisdictions holding that there is no coverage for the insured general contractor for damage caused by

---

[4] There is no dispute that the damage occurred in the coverage territory and during the policy period.

the faulty workmanship of a subcontractor. *See, e.g., Dodson v. St. Paul Ins. Co.*, 812 P.2d 372 (Okla. 1991). Aetna argues through these cases that to grant coverage would turn the CGL policy into a performance bond, holding the insurance company liable for the insured's faulty workmanship. Finally, under this first prong of its argument, Aetna contends that here there was no occurrence to trigger coverage. The policy defines occurrence as an accident, and faulty workmanship is no accident. Thus, asserts Aetna, we need not reach the exclusions in the policy because there is no grant of coverage in the first place.

Aetna then argues that, should we reach them, the exclusions effectively deny coverage in this case. First, it argues that the damage is excluded under the business risk exclusion, h.(6)(b). This exclusion contains an exception for property damage to completed works. Aetna argues that the PCOH does not include inherent defects. Such defects are in existence at the time the work is completed and thus do not occur after completion. Thus, the exception to the business risk exclusion does not apply, as the defects did not occur after completion. Since the damage is not included in the PCOH, exclusion j. does not apply. But even if it did, the exception thereto could in no way grant coverage. Exclusions can only subtract from coverage, and here the damage was never covered.

Regarding the initial coverage issue, WAI responds that because the damage was caused by negligence, it was unintentional and therefore an accident. As such, it is a covered occurrence. Furthermore, the occurrence was the water leakage, and this happened after completion. Thus, the damage is included in the P COH. WAI concedes that under older policies coverage would have been excluded under the business risk

exclusion, since those policies "clearly and unambiguously excluded coverage for any claims for costs involving repair or replacement of a contractor's own work regardless of whether it was done by a subcontractor." It points out, however, that the standard form CGL was changed significantly in 1986. The second paragraph of exclusion j. was added. This addition clearly excepts the work of subcontractors from the business risk exclusion.

We find WAI's interpretation to be the more logical. Furthermore, we find the language of the policy to clearly cover the situation present in this case.

██

First, we look at the language of the policy to decide if there is initial coverage. The policy applies to property damage caused by an occurrence. Property damage, as defined by the policy, means physical injury to tangible property. Here, water entering leaky windows wrecked drapery and wallpaper. This is physical injury to tangible property. An occurrence, as defined by the policy, is an accident. An accident is an "event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (1993). Here, the parties have stipulated that fifty percent of the damages were due to Keller's negligence. Furthermore, there is no question that an event occurred: the windows leaked. This is an accident. So we have property damage caused by an occurrence and the policy applies.

██

Now that we have a grant of coverage, we turn to the exclusions. The first at issue is h.(6)(b). It excludes from coverage damage to any part of property "that

must be restored, repaired or replaced because 'your work' was incorrectly performed on it." This would appear to exclude coverage in this case. There is, however, an exception to this exclusion: it does not apply to property damage included in the PCOH. So the question becomes whether the damage here is so included. We see no reason why it is not. The PCOH includes property damage "occurring away from premises you own or rent and arising out of . . . 'your work' except . . . [w]ork that has not yet been completed or abandoned." "Your work," under the policy, means "[w]ork or operations performed by you or on your behalf. . . ." Here, the damage did not occur on Keller's property. And while Aetna argues that the damage did not occur after completion because the damage was the faulty workmanship itself, we are not persuaded. The damage occurred when water leaked through the windows and wrecked the interior. This was after completion. Aetna's claim that the damage was done when the windows were installed is too strained and we do not buy it. Furthermore, our interpretation is supported by industry commentators. *See infra* pp. 399–400. This claim is included in the PCOH. Thus, the exception to the h.(6)(b) exclusion restores coverage.

We now turn to exclusion j., since this is "property damage" to "your work" included in the PCOH. Clearly, coverage would be denied under this exclusion. However, paragraph two restores coverage if "the work out of which the damage arises was performed on your behalf by a subcontractor." There is no need to construe or interpret this language: it unmistakably applies to the situation in this case.

Our conclusion that the exception applies to situations such as the present is supported by both case law

from other jurisdictions and commentators in the liability insurance field. In *O'Shaughnessy*, 543 N.W.2d at 99, a general contractor contracted to build a home and then subcontracted out all the actual building, while he performed supervisory functions. *See id.* at 100. Because of improper construction by some of the subcontractors, damage was done to various parts of the home. Smuckler's CGL policy contained the "on your behalf by a subcontractor" exception. *See id.* at 103–04. The court noted that this exception did not appear in CGL policies prior to 1986, and therefore pre–1986 cases with similar fact patterns no longer applied. *See id.* Focusing on the "plain language of the exception," the court held that "[i]t would be willful and perverse for this court simply to ignore the exception that has now been added to the exclusion." *Id.* at 104. The court went on to note that industry commentators' views supported its holding. *See id.* at 105. *See also* Thomas J. Casamassima and Jeanette E. Jerles, *Defining Insurable Risk in the Commercial General Liability Insurance Policy: Guidelines for Interpreting the Work Product Exclusion*, 12-Jan CONSTRUCTION LAW. 3, at 47–48 (1992) (noting that the change in policy language was in response to the needs of most commercial insureds and "specifically provid[es] coverage for subcontractor's work"); Jotham D. Pierce, Jr., *Allocating Risk Through Insurance and Surety Bonds*, 425 PLI/REAL 193, 199 (1998) (stating that "[e]ven the courts that regarded themselves as the primary upholders of the business risk rule, denying coverage where possible, recognized the intent of this language" and quoting *O'Shaughnessy*). The commentators give a hypothetical to demonstrate when the new language would apply.

399

> The named insured is a general contractor who has built an apartment house with the services of numerous subcontractors. After the building is completed and put to its intended use, a defect in the building's wiring (put in by a subcontractor) causes the building, including work of the general contractor and other subcontractors, to sustain substantial fire damage. The named insured is sued by the building's owner. Although the named insured's policy excludes damage to "your work" arising out of it or any part of it, the second part of [the exclusion] makes it clear that the exclusion does not apply to the claim. That is because the *work out of which the damage arose was performed on the named insured's behalf by a subcontractor.* \*\*\* Thus, barring the application of some other exclusion or adverse policy condition, the loss should be covered, including the part out of which the damage arose.

*O'Shaughnessy*, 543 N.W.2d at 105 (quoted source omitted; alteration in original). The situation here is indistinguishable.

For whatever reason, the industry chose to add the new exception to the business risk exclusion in 1986. We may not ignore that language when interpreting case law decided before and after the addition. To do so would render the new language superfluous. *See Bulen*, 125 Wis. 2d at 263, 371 N.W.2d at 394. We realize that under our holding a general contractor who contracts out all the work to subcontractors, remaining on the job in a merely supervisory capacity, can ensure complete coverage for faulty workmanship. However, it is not our holding that creates this result: it is the addition of the new language to the policy. We have not made the policy closer to a performance bond for general contractors, the insurance industry has.

Apparently realizing that the exception to the exclusion seriously jeopardizes its argument, Aetna argues that we are prohibited by our *Bulen* case from even considering the language contained in the exception and that we should not employ the analysis we have just set forth. In *Bulen*, we had before us a policy containing an exclusion known as (A) which foreclosed liability "assumed by the insured under any contract or agreement." *See id.* at 261, 371 N.W.2d at 393. West Bend, the insurer, construed Exclusion (A) to mean that faulty workmanship was a liability that was covered by contract and was not an event, like an accident, that would have been covered under a typical CGL policy. The insured, a contractor named Bence, pointed out that an exception to the exclusion said, "but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." *Id.* Bence argued that this exception overrode the exclusion in his case because the claims of the owners against him were "premised upon the actual and implied warranty." *See id.* at 265, 371 N.W.2d at 395. But we disagreed. We wrote:

> Such claims must nevertheless be otherwise cognizable under the general grant of coverage *in the first instance* in order to constitute a claim "to which this insurance applies." In this case, such coverage is not included under the general grant of coverage and is effectively excluded under the provisions of paragraphs (N) and (O).

*Id.* at 265–66, 371 N.W.2d at 395 (emphasis added; citation omitted).

Based upon the italicized portion of this quotation, Aetna argues that, as in *Bulen*, since the general grant

401

of coverage does not "cover an accident of faulty workmanship but rather faulty workmanship which causes an accident," *id.* at 265, 371 N.W.2d at 395, and since the facts here show an accident of faulty workmanship, we should not even examine the exclusions and the exceptions to the exclusions. In Aetna's view, it is enough to know that this is a faulty workmanship case and *Bulen* stands for the proposition that CGL policies do not offer a general grant of coverage for faulty workmanship "in the first instance." *See id.*

We reject Aetna's reliance on *Bulen*. As a preliminary matter, nowhere in *Bulen* did this court say that we do not even get to the exclusions and exceptions to the exclusions if the claim is faulty workmanship and the policy at issue is a CGL policy. A close look at *Bulen* reveals that the court spent practically its entire discussion on the exclusionary language of that policy. Four pages were used to discuss not only the general understanding of CGL policies in construction trade situations, but also the exclusions and exceptions that were pertinent. In fact, it was the language in all of the relevant exclusions which convinced this court that the policy did not grant coverage for faulty workmanship.

More to the point, a close reading of *Bulen* reveals that although Exclusion (A) contained an exception for warranties, Exclusions (N) and (O), standing alone, operated to exclude coverage under the facts of the case. *See id.* at 263, 371 N.W.2d at 394. Exclusion (N) excluded damage arising out of the named insured's products and Exclusion (O) excluded damage to work performed by or on behalf of the named insured. Reading the policy as a whole, we held that Exclusions (N) and (O) showed the true intent of the policy, which was to deny coverage for faulty workmanship. To the argu-

ment that Exclusion (A) could be read to say otherwise, we stated:

> Paragraphs (N) and (O) clearly exclude the occurrence here. Even if (A) is ambiguous or difficult to interpret, nothing in its language suggests that it extends any coverage to Bence which is clearly and unambiguously excluded by the latter paragraphs. Thus we conclude that even if (A) is ambiguous, such ambiguity is not genuine.

*Id.* at 264, 371 N.W.2d at 394.

Thus, we held that even if Exclusion (A) could be read to provide coverage, Exclusions (N) and (O) worked to exclude coverage. And reading (A), (N) and (O) together, we concluded that the general grant of coverage did not include claims for faulty workmanship.

Here, unlike Bence, whose own faulty workmanship was at the heart of the lawsuit in *Bulen*, Keller was being called to account for the faulty workmanship of its subcontractor. We have reviewed the complete policy just as we did in *Bulen*. In doing so, we have analyzed all the exclusions and all the exceptions to the exclusions to determine the general grant of coverage afforded by Aetna. After review, we can come to no other conclusion than that the policy was designed to protect Keller in case it was called to account for work done on its behalf by a subcontractor. Thus, the policy in this case differs from the policy in *Bulen* and that case does not serve to help Aetna.

*By the Court.*—Judgment affirmed.