UNITED STATES of America, Plaintiff,

v.

Peter THORSON, Managed Investments Inc., Construction Management, Inc. and Gerke Excavating Inc., Defendants,

Acuity and Rural Mutual Insurance Company, Intervening Defendants.

No. 03–C–00740–C.

United States District Court, W.D. Wisconsin.

Dec. 29, 2003.

Leslie K. Herje, Madison, WI, for Plaintiff.

WIlliam T. Curran, Curran, Hollenbeck & Orton, S.C., Mauston, WI, for Defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for injunctive and monetary relief in which the United States contends that defendants Peter Thorson, Managed Investments Inc., Construction Management, Inc. and Gerke Excavating, Inc. violated 33 U.S.C. §§ 1319(b) and (d) of the Clean Water Act "for the unauthorized discharge of pollutants into waters of the United States." Plaintiff asks the court to (1) permanently enjoin defendants from discharging pollutants into the waters of the United States without a permit; (2) require defendants to remedy the damage caused by their unlawful activities at their own expense; and (3) impose civil penalties pursuant to 33 U.S.C. § 1319(d). Jurisdiction is present. 28 U.S.C. § 1331.

■ Intervening defendant Acuity provides general liability insurance to defendant Gerke; intervening defendant Rural Mutual Insurance Company provides commercial liability insurance to defendants Thorson, Managed Investments and Construction Management. Presently before the court is intervening defendant Rural Mutual's motion for declaratory judgment and intervening defendant Acuity's motion for summary judgment. Both intervening

defendants seek a determination that they are not under a duty to defend in this suit. Because the existence of a duty to defend is a question of law, this issue may be resolved on summary judgment. *Doyle v. Engelke*, 219 Wis.2d 277, 284, 580 N.W.2d 245, 248 (1998).

■ I conclude that intervening defendants Rural Mutual and Acuity have no duty to defend under the relevant policies. An insurer has a duty to defend an insured only if the complaint alleges facts that, if proved, "would give rise to recovery under the terms and conditions of the insurance policy," *Elliott v. Donahue*, 169 Wis.2d 310, 320–21, 485 N.W.2d 403 (1992). The relevant policies indemnify defendants against amounts incurred as a result of *accidental* property damage. Because the alleged actions of defendants were substantially certain to cause the alleged property damage, the property damage was not accidental. The policies do not provide coverage for the damages alleged in this action. Therefore, the insurance providers are under no duty to defend.

I find from the parties' proposed findings of fact that the following are material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

Defendants Construction Management, Inc., Managed Investments, Inc. and Gerke Excavating Inc. are Wisconsin corporations, each having its principal place of business in Tomah, Wisconsin. Defendant Thorson is an individual who acted at all relevant times as an agent for defendant Investment Management, Inc. (I will refer to defendants Thorson, Construction Management, Inc. and Managed Investments, Inc. collectively as "Thorson"). Intervening defendant Acuity is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin. It issued a comprehensive general liability policy to defen-

dant Gerke for the period of January 1, 2001, through January 1, 2002. Intervening defendant Rural Mutual is a Wisconsin corporation with its principal place of business in Madison, Wisconsin. It issued a general liability policy and an excess liability policy to defendant Thorson for the period of March 15, 2001, through March 15, 2002. All relevant policies were issued in the state of Wisconsin.

### B. *The Claim*

Plaintiff brought this action against defendants for violating 33 U.S.C. §§ 1319(b) and (d) of the Clean Water Act, which prohibits parties from discharging pollutants into navigable waters without a permit. Plaintiff alleges that defendants or persons acting on their behalf, discharged into waters of the United States "dredged" or "fill" material, which the act defines as "pollutants." Plaintiff asks the court to (1) permanently enjoin defendants from discharging pollutants into the waters of the United States without a permit; (2) require defendants to remedy the damage caused by their unlawful activities at their own expense; and (3) impose civil penalties on defendants pursuant to 33 U.S.C. § 1319(d). (Defendant Thorson makes a number of arguments regarding intervening defendant Rural Mutual's proposed facts about the allegations of the complaint. However, he does not dispute that the allegations were made. Rather, he argues that the allegations are untrue or misleading. These disputes are neither responsive to the facts proposed nor relevant; " 'the duty to defend is triggered by the allegations contained within the four corners of the complaint' ... and has nothing to do with the merits of the claim." *Smith v. Katz*, 226 Wis.2d 798, 806, 595 N.W.2d 345, 350 (1999) (quoting *Newhouse v. Citizens Security Mutual Insurance Co.*, 176 Wis.2d 824, 835, 501 N.W.2d 1

(1993)).) Plaintiff makes the following allegations of fact in its complaint.

Defendant Thorson owns or is in the process of purchasing 5.8 acres in LaGrange, Wisconsin. The property contains wetlands adjacent to Deer Creek, which is a tributary of a navigable river. Because the wetlands adjoin navigable waters, the Clean Water Act regulates their use. Defendant Thorson applied to both the Secretary of the Army, acting through the Chief of Engineers (Corps), and to the Wisconsin Department of Natural Resources for a permit to discharge dredged or fill material at specified sites. On May 24, 1999, the Department of Natural Resources denied defendant Thorson's application because it did not provide a reasonable assurance that the project would comply with the state water quality standards for wetlands. The Corps denied defendant Thorson's application two weeks later.

After this first round of denials, the United States Supreme Court issued its opinion in *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001), which limited the places in which the Corps could enforce the Clean Water Act. Defendant Thorson continued to "[take] steps to have the [s]ite dredged and filled" in February 2001, by asking the Corps field office whether it still considered the Clean Water Act to regulate the site. The Corps responded that it did.

Although they had not obtained a permit, defendants Gerke and Thorson agreed on or about March 23, 2001, that defendant Gerke was to excavate and fill a particular site owned by defendant Thorson. The contracting parties included the following clause in the agreement: "Gerke Excavating, Inc. will not bear responsibility for any fines or penalties assessed by government agencies. If project is shut down by any government agencies for any reason

prior to completion, owner shall pay for all work completed." The day that defendant Gerke was to start work on the site, defendant Thorson contacted the Corps' district office to see whether it agreed with the opinion of the field office that the site was still regulated by the Clean Water Act. Two different representatives of the Corps confirmed that the site was still regulated and that a permit was required for defendants' project. Despite this confirmation of the need for a permit, defendant Gerke commenced the dredging and excavating on March 27, 2001, and March 28, 2001. Defendants discontinued their efforts when the Army Corps of Engineers issued them a cease and desist order on March 28, 2001.

### C. The Acuity Policy

The Acuity policy indemnifies defendant Gerke for "those sums that [it] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" when that bodily injury or property damage is caused by an "occurrence." The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (The policy contains four potentially relevant exclusions, but it is not necessary to discuss them because the policy does not cover the property damage alleged by plaintiff).

Defendant Gerke also purchased limited pollution liability coverage. Under this additional coverage, intervening defendant Acuity is legally obligated to pay "those sums that the insured becomes legally obligated to pay as covered pollution costs or expenses or as damages because of bodily injury or property damage arising out of a pollution incident." As in the general coverage, the bodily injury or property damage must be the result of an "occurrence;" the term "occurrence" is also defined as it is in the general policy. In addition, the

policy defines a "pollution incident" as an accidental discharge of pollutants.

### D. *The Rural Mutual Policies*

Both the general liability policy and the excess liability policy insure defendant Thorson against "those sums that [it] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" when that bodily injury or property damage is caused by an "occurrence." The term "occurrence" is defined in both policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Both policies exclude recovery for punitive damages. (Both policies contain a number of exclusion provisions that may preclude coverage. Again, it is unnecessary to discuss these provisions because the alleged property damage is not covered by the policies.)

### OPINION

 Because all of the policies involved in this suit were issued in Wisconsin, Wisconsin law governs their interpretation. *Lexington Insurance Company v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir.1999); *Kremers–Urban Co. v. American Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156 (1984). An insurer has a duty to defend an insured in any suit in which the complaint alleges facts that, if proved, "would give rise to recovery under the terms and conditions of the insurance policy." *Elliott*, 169 Wis.2d at 320–21, 485 N.W.2d 403. An insurer's duty to defend is determined by comparing the allegations within the four corners of the complaint to the terms of the insurance policy. *Smith*, 226 Wis.2d at 806, 595 N.W.2d at 350. The merits of the claim are irrelevant in making this determination. *Radke v. Fireman's Fund Insurance Co.*, 217 Wis.2d 39, 43, 577 N.W.2d 366, 369 (Ct. App.1998). Because an insurer's obligation to defend a suit is not extinguished if the insured is eventually found to be faultless, courts regard "the duty to defend [as] broader than the duty to indemnify." *Johnson Controls, Inc. v. Employers Ins. of Wausau*, 2003 WI 108, ¶ 30, 264 Wis.2d 60, 85, 665 N.W.2d 257, 270.

 "In general, the interpretation of an insurance contract is controlled by principles of contract construction." *Johnson Controls*, 2003 WI 108 at ¶ 30, 665 N.W.2d 257 (citing *Kuhn v. Allstate Insurance Co.*, 193 Wis.2d 50, 60, 532 N.W.2d 124 (1995); *Maas v. Ziegler*, 172 Wis.2d 70, 79, 492 N.W.2d 621 (1992)). The goal in contract construction is determining the intentions of the contracting parties. *Id.* "Of primary importance is that the language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean." *Sprangers v. Greatway Insurance, Co.*, 182 Wis.2d 521, 536, 514 N.W.2d 1, 6 (1994). Ambiguous terms and exclusionary provisions are to be narrowly construed against the insurer. *Peace v. Northwestern National Insurance Co.*, 228 Wis.2d 106, 121 596 N.W.2d 429, 436 (1999). Terms and conditions are ambiguous if "they are fairly susceptible to more than one construction." *Kremers–Urban*, 119 Wis.2d at 735, 351 N.W.2d 156. Thus, there is a duty to defend if the policy even arguably covers the claim. "However, this principle does not allow a court to eviscerate an exclusion that is clear from the face of the insurance policy." *Peace*, 228 Wis.2d at 121, 596 N.W.2d at 436.

 Determining the existence of a duty to defend requires a two-step analysis. *Kalchthaler v. Keller Construction Co.*, 224 Wis.2d 387, 397, 591 N.W.2d 169 (Ct.App.1999). First, a court must compare the allegations contained within the four corners of the complaint with terms of the policy and determine whether there is initial coverage. *Id.; Smith*, 226 Wis.2d at

806, 595 N.W.2d at 350. Then, if the court determines that there is initial coverage, it must determine if one of the exclusion provisions applies. *Kalchthaler*, 224 Wis.2d at 397–98, 591 N.W.2d 169.

### A. *Recoverable Damages*

■■■ The basic scope of coverage in all of the relevant policies is described as amounts the insured parties become legally obligated to pay as *damages* because of property damage. The first issue is whether any of the forms of relief sought by plaintiff are the type of damages that are recoverable under commercial liability policies. If none of the forms of relief sought by the plaintiff are recoverable, then the insurer has no duty to defend. *City of Edgerton v. General Casualty Company of Wisconsin*, 172 Wis.2d 518, 493 N.W.2d 768 (Ct.App.1992), *overruled on other grounds in Johnson Controls*, 2003 WI 108, 665 N.W.2d 257.

■■■ Plaintiff seeks: (1) an injunction; (2) civil penalties; and (3) restoration of the site. An injunction to prevent future injury is an equitable remedy that is not recoverable as damages under a commercial general liability policy. *Johnson Controls*, 2003 WI 108 at ¶ 37, 665 N.W.2d 257. Intervening defendant Rural Mutual argues that civil penalties under the Clean Water Act are not recoverable under a general liability insurance policy. It cites *City of Fort Pierre v. United Fire & Casualty Co.*, 463 N.W.2d 845, 848 (S.D.1990), to support its argument that civil penalties under this act are punitive in nature and that public policy bars a party from shifting the burden of paying punitive damages to an insurer. Intervening defendant Rural Mutual is partly correct. Under the Clean Water Act, civil penalties are punitive in nature. *Kelly v. U.S. E.P.A.*, 203 F.3d 519, 523 (2000). However, unlike South Dakota, Wisconsin does not prohibit the practice of shifting punitive damages

to an insurer. *Brown v. Maxey*, 124 Wis.2d 426, 444–47, 369 N.W.2d 677, 686–88 (1985); *City of West Allis v. Wisconsin Electric Power Co.*, 2001 WI App. 226, ¶ 47, 248 Wis.2d 10, 44, 635 N.W.2d 873, 888. Thus, Rural Mutual's general liability might provide coverage for defendant Thorson's civil penalties were it not for the specific exclusions they contain. Both policies specifically exclude recovery for punitive damages. On the other hand, intervening defendant Acuity has not shown that either its general policy or the limited pollution liability coverage have similar exclusions. Moreover, although the Rural Mutual policies would not provide coverage for the first two types of relief sought by plaintiff, the cost or burden of restoring the site is presumptively a recoverable damage under commercial general liability policies. *Johnson Controls*, 2003 WI 108 at ¶ 5, 665 N.W.2d 257. Thus, the remedies sought include recoverable forms of "damages."

### B. *Scope of "Property Damage"*

The next issue is whether the property damage alleged in the complaint falls within the scope of the "property damage" covered by the policies. The general policy of Acuity and both the general and excess policies of Rural Mutual define the scope of coverage as "those sums that the insured becomes legally obligated to pay as damages *because of 'bodily injury' or 'property damage'* to which this insurance applies." Under the limited pollution liability coverage that defendant Gerke purchased, Acuity is legally obligated to pay "those sums that the insured becomes legally obligated to pay as covered pollution costs or expenses or as damages *because of bodily injury or property damage* arising out of a pollution incident." Plaintiff has not alleged any bodily injury in the complaint. Therefore, all damages must be the result of covered property damage.

Because all of the policies contain the same definitions regarding the term "property damage," I will address this issue collectively.

■ "Property damage" must be caused by an "occurrence." The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." An "accident" is " '[a]n unexpected, undesirable event' or 'unforeseen incident' which is characterized by a 'lack of intention.' " *Doyle,* 219 Wis.2d at 284, 580 N.W.2d at 248 (quoting *The American Heritage Dictionary of the English Language* 11 (3d ed.1992)).

■ Because the policies cover only accidental property damage, no duty to defend arises if the property damage alleged in the complaint is clearly the intended or expected result of the alleged actions of defendants Thorson and Gerke. *School District of Shorewood v. Wausau Insurance Co.,* 170 Wis.2d 347, 364, 488 N.W.2d 82, 87 (1992). Conversely, if the alleged damage is even arguably an accidental consequence of defendants' alleged acts, the intervening defendants will have a duty to defend the suit unless they can show that an exclusion applies. *Id.* Although the issue of intent is typically a question of fact, *Gouger v. Hardtke,* 167 Wis.2d 504, 512, 482 N.W.2d 84 (1992), intent may be inferred as a matter of law when an act is substantially certain to cause a particular injury. *Id.* at 512, 482 N.W.2d 84; *C.L. v. School District of Menomonee Falls,* 221 Wis.2d 692, 700, 585 N.W.2d 826 (Ct.App.1998). Defendants' actual actions and intent are irrelevant because the existence of a duty to defend is determined by the complaint's allegations and not by its merits. *Radke,* 217 Wis.2d at 43, 577 N.W.2d at 369.

■ The property damage alleged in the complaint is the discharge of pollutants (dredged and fill material) into the wetlands on the site. Plaintiff alleges that defendants Thorson and Gerke formed an agreement under which defendant Gerke was to excavate and fill the site and that defendant Gerke began to excavate and fill the wetlands on the site in accordance with this agreement. These alleged acts indicate that defendants both intended and anticipated that dredged or fill material would be discharged into the wetlands.

Defendants Thorson and Gerke argue that they did not intentionally violate the law because they were not sure whether the Clean Water Act applied to the wetlands on the site after the United States Supreme Court's holding in *Solid Waste,* 531 U.S. 159, 121 S.Ct. 675. Defendant Thorson asserts that contrary to the allegations in the complaint, the Corps did not inform him until after defendant Gerke began the work that the wetlands on his property were still covered by the Clean Water Act and that he would still need a permit. Defendant Gerke contends that the court should not infer that he knew his actions violated the Clean Water Act because he inserted a contract provision stating that he would not be held liable for any resulting government fines or penalties.

These arguments are unavailing for three reasons. First, as stated above, the truth of the allegations relates only to the merits of the claim and has no bearing on the existence of a duty to defend. *Radke,* 217 Wis.2d at 43, 577 N.W.2d at 369. Second, it is irrelevant whether defendants Thorson and Gerke violated the law intentionally; the policies indemnify the insureds for accidental "property damage" and not accidental violations of the law. Finally, a mistake of law does not exonerate a party's otherwise intentional actions; knowledge of the law is presumed. *Cf. State v. Vinson,* 269 Wis. 305, 309, 70 N.W.2d 1, 4 (1955); *State v. Britzke,* 108 Wis.2d 675, 683, 324 N.W.2d 289, 292 (Ct.

App.1982) ("Failure to know that one's conduct is criminally punishable is not a defense.").

Defendants rely on *City of Fort Pierre*, in which the court held that the insurer would have had a duty to defend an insured that filled in wetlands without permit unless the allegations in complaint indicated that the insured's failure to obtain permit was intentional. *Id.* 463 N.W.2d at 847. However, defendants fail to recognize that the scope of the coverage they have purchased is entirely different from the coverage provided by the policy in *City of Fort Pierre*. Both the defendants in that case and the present case were sued for (1) filling in wetlands (2) without a permit. However, in *City of Fort Pierre*, the relevant policy insured against negligent omissions and thus, the insurance would have provided coverage for the insured's negligent failure to obtain a permit. By contrast, defendants are insured against accidental property damage. Thus, they are insured only for filling in wetlands unintentionally; the issue whether they failed to obtain a permit accidentally or intentionally is irrelevant.

In addition, defendant Gerke argues that the complaint does not allege specifically that defendants acted with intent. In *Jessica M.F. v. Liberty Mutual Fire Insurance Co.*, 209 Wis.2d 42, 54, 561 N.W.2d 787 (Ct.App.), the court held that an intentional acts exclusion in an insurance policy barred coverage in a negligence action because the alleged facts revealed intentional conduct. Thus, intent may be inferred from the alleged actions of defendants even when a plaintiff does not allege intent expressly and will not need to prove it to establish a defendant's liability.

C. *Applicability of Exclusions*

The applicability of exclusions must be determined only if the court first determines that there is initial coverage over the damage alleged in the complaint. *Kal-chthaler*, 224 Wis.2d at 397, 591 N.W.2d 169. Because I conclude that the damage alleged in the complaint falls outside the scope of the property damage covered in the relevant policies, it is unnecessary to determine the applicability of any of the policies' exclusions.

ORDER

IT IS ORDERED that intervening defendant Rural Mutual's motion for declaratory judgment and intervening defendant Acuity's motion for summary judgment are GRANTED. FURTHER, IT IS ORDERED that intervening defendant Rural Mutual has no duty to defend or indemnify defendants Construction Management, Inc., Managed Investment, Inc. and Peter Thorson and intervening defendant Acuity has no duty to defend or indemnify Gerke Excavating, Inc.