NELSON, Plaintiff in error, v. STATE, Defendant in error.

*No. State 127. Argued December 2, 1971.—Decided January 4, 1972.*
(Also reported in 193 N. W. 2d 5.)

For the plaintiff in error there was a brief and oral argument by *Richard L. Hamilton* of Appleton.

For the defendant in error the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. The issue on this appeal is whether or not the evidence is sufficient to support the conviction. It is elementary that proof of intent to kill is an essential element of the crime charged. The principal thrust of defendant's argument goes to the question of intent to kill a lieutenant and other officers of the Appleton police department.

June 29, 1969, at approximately 1:55 a. m., two police officers observed the defendant walking around and behind various business establishments in the city of Appleton. They stopped and questioned him, whereupon he became somewhat belligerent. The officers then requested him to accompany them to the police department to explain his activity, but the defendant refused to go. During trial, the defendant testified he refused this request because he knew he was in trouble in that he was carrying a concealed weapon on his person. It appears

he had a loaded pistol, two knives and a number of cartridges. Upon refusing to go to the police station with the officers, the defendant pulled a pistol from underneath his clothing, disarmed the officers, ordered them to leave the scene, and then he left with their revolvers.

The police station was but a short distance from the scene of this incident. The officers summoned assistance. One of them followed the defendant on foot, the other in a squad car. A number of police officers responded to the call for assistance. Defendant ultimately positioned himself behind a tree in the vicinity of Morgan school. Police spotlights were directed to the area and an exchange of shots took place between the defendant and the police officers. On several occasions, the defendant was instructed to throw away his weapons and give himself up. The exchange of shots concluded when the defendant was wounded and apprehended. At this time his own gun was removed from his person. It contained five live cartridges, two empty chambers and one cartridge that had been fired. One officer's gun was found at the base of the tree and had not been fired; the other officer's gun was found about 20 feet from the base of the tree and had been fired four times.

The testimony as to what transpired during the exchange of shots prior to the apprehension of the defendant is in conflict. The defendant testified that one of the shots he fired went into the ground when the gun accidentally discharged while in a cocked position; the other shots were fired into the air in an attempt to escape; and that he at no time intended to kill an officer. Some of the officers did in fact observe the defendant discharge a gun into the ground and also into the air. The lieutenant was positioned at the corner of the school building and he testified that while observing the defendant from around the corner of the building, he saw him positioned in a manner so as to shoot at him. A woman living in a

nearby house observed the activity. She testified she heard the officers' directions to the defendant to "throw down your gun." She further testified that she observed the lieutenant's head protrude around the corner of the school building and was positive the defendant shot at him. Her testimony in this regard was based upon the position of the defendant as he leaned around the tree and the direction of the flash from the defendant's gun at the time of discharge. She could not actually see the gun.

Three other witnesses, present in nearby houses, testified they observed flashes from behind the tree. One of them was of the opinion that the shots were aimed at police officers although none of them were able to make specific observations as to the aim of the shots, *i.e.*, whether they were high, low or at body level.

The record in this case has been thoroughly reviewed and we do not believe a more detailed review of the testimony in this opinion is necessary to resolve the issues presented.

On appeal, in order to sustain a challenge to the sufficiency of the evidence, the following test must be satisfied:

". . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.'" *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183; *Zebrowski v. State* (1971), 50 Wis. 2d 715, 723, 185 N. W. 2d 545.

It is the position of the defendant that the state has failed to meet its burden of proving that the defendant's acts in firing any of the shots were coupled with the requisite intent to kill. In essence, argues the defendant, the testimony adverse to the defendant's version of the

facts consisted of a number of witnesses who observed flashes of fire from the area where the defendant was positioned and assumed that defendant was firing at the police officers. Furthermore, none of these witnesses could both observe the actual gun in the hand of the defendant and identify any specific shots fired by the defendant which were in proximity to any of the officers. Also, the witnesses presented by and favorable to the defense testified that the shots they observed were either fired into the air or into the ground.

However, as the trial court so held, the testimony of the woman in the nearby residence, if believed by the jury, constituted sufficient evidence of the defendant's intent to kill the lieutenant. Intent must necessarily be evidenced by the conduct of the actor and the circumstances surrounding the act. *State v. Wells* (1971), 51 Wis. 2d 477, 187 N. W. 2d 328; *State v. Vinson* (1955), 269 Wis. 305, 68 N. W. 2d 712, 70 N. W. 2d 1. The fact that she could not see the gun in the defendant's hand does not in itself render her testimony insufficient. The testimony of this woman was also corroborated by the lieutenant who testified that when he peered around the corner he observed the defendant with his arm extended, apparently ready to shoot. After the lieutenant pulled his head back, the defendant allegedly fired a shot. Although the defendant testified he was blinded by the spotlights, he acknowledged he saw an officer at the corner of the building. There is also evidence that defendant and the lieutenant exchanged remarks.

The resolution of the instant case was determined largely on the credibility of the witnesses. Where conflicting testimony is presented, it is for the trier of fact to reconcile all of the credible evidence or to reject some evidence as incredible. *State v. Chacon* (1971), 50 Wis. 2d 73, 183 N. W. 2d 84. The credibility of the witnesses lies within the province of the trier of fact; it is not a

function of the appellate court. *Quinn v. State* (1971), 50 Wis. 2d 96, 183 N. W. 2d 61.

The evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt. [1]

*By the Court.*—Judgment and order affirmed.

---

[1] *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379.