HOLMES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 187. Argued April 1, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 657.)

390

For the plaintiff in error there was a brief by *Shellow & Shellow* and *James M. Shellow,* attorneys, and *Gilda B. Shellow* and *Harold L. Harlowe* of counsel, all of Milwaukee, and oral argument by *James M. Shellow.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.   Two issues are raised on appeal by court-appointed counsel for the defendant: (1) That the trial together of separate charges was error; and (2) that failure to submit a requested instruction and verdict of endangering safety by conduct regardless of

life was error. Each claim of error will be separately considered.

*Trial together of separate charges.*

Under Wisconsin statutory law a court may order two or more complaints, informations or indictments to be tried together if the crimes and defendants could ". . . have been joined in a single complaint, information or indictment . . . ." [1] Two or more crimes may be charged in the same complaint, information or indictment if the crimes charged ". . . are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. . . ." [2]

The trial court held that the charges of armed robbery and attempted murder were based on a same or single transaction. We agree, holding that the armed holdup, flight with officers in hot pursuit and attempted shooting to evade apprehension did constitute a single transaction. A successful holdup includes a successful getaway. Where charges of distributing unlawful drugs and assaulting arresting officers were joined, a federal court of appeals held: "Since the two offenses charged arose from a single transaction, there was clearly no misjoinder under F. R. Crim. P. 8 (a). . . ." [3] As clearly, the two charges in the case before us arose from a single transaction.

However, the joinder of trial is to follow the same procedure ". . . as if the prosecution were under such single complaint, information or indictment." [4] This

---

[1] Sec. 971.12 (4), Stats., entitled: "Trial Together of Separate Charges."

[2] Sec. 971.12 (1), Stats., entitled: "Joinder of Crimes."

[3] *United States v. Williamson* (5th Cir. 1973), 482 Fed. 2d 508, 511. (*Note:* Sec. 971.12, Wis. Stats., was taken from and follows the language used in the Federal Rules of Criminal Procedure, 8, 13, and 14.)

[4] Sec. 971.12 (4), Stats., providing in pertinent part, as to trial together of separate charges: ". . . The procedure shall be the

makes applicable the statute providing that, if it appears that a defendant or the state is prejudiced by the joinder, the court ". . . may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . ." [5] It is self-evident that a worthwhile public interest is served by the consolidated trial of joinable charges. Duplicitous and time-consuming trials in which the same factual situation is involved are thus avoided. However, where possible prejudice to the defendant or the state is involved, there is to be a weighing of the possibility of prejudice against the public interest served by consolidated trial. [6] What is involved is an exercise of trial court discretion. On the granting of a motion to consolidate, reversal requires a finding of abuse of discretion, exactly as would be the test on denial of a motion for severance. [7]

In opposing the consolidation for trial of the armed robbery and attempted murder charges, the defendant here by supporting affidavit claimed that consolidation would affect his constitutional right against self-incrimination in that defendant ". . . intends to testify in the attempted murder case and not in the armed robbery matter. . . ." The affidavit stated that ". . . testimony by Defendant in the attempted murder matter is essential and critical to his defense while testimony in the armed robbery matter would be highly prejudicial. . . ." Where separate and distinct but related acts or transactions are involved, possible prejudice may arise if joint trial could result in the jury using ". . . the evidence of one of the

same as if the prosecution were under such single complaint, information or indictment."

[5] Sec. 971.12 (3), Stats., entitled: "Relief from Prejudicial Joinder."

[6] *See: United States v. Haim* (D. C. N. Y. 1963), 218 Fed. Supp. 922; *United States v. Teemer* (D. C. W. Va. 1963), 214 Fed. Supp. 952.

[7] *United States v. Weber* (3d Cir. 1970), 437 Fed. 2d 327, 332, certiorari denied (1971), 402 U. S. 932, 91 Sup. Ct. 1524, 28 L. Ed. 2d 867.

crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged . . . ." [8] However, where, as here, there are two charges involving a single act or transaction, evidence on the one charge is relevant and admissible on the other.[9] Severance is not required where the two charges involving a single act or transaction are ". . . so inextricably intertwined so as to make proof of one crime impossible without proof of the other. . . ." [10] In the case before us, evidence as to the attempted murder would have been relevant on the getaway aspect of the armed robbery; evidence as to the armed robbery would have been relevant to the attempted murder charge as supplying motive. Where charges joined in a single trial arise from a single criminal transaction or have a common scheme, plan or design, the cases hold that there is no abuse of discretion in a trial court's granting a motion for consolidation or denying a motion for severance.[11]

[8] *Commonwealth v. Peterson* (1973), 453 Pa. 187, 194, 307 Atl. 2d 264, citing *Drew v. United States* (D. C. Cir. 1964), 331 Fed. 2d 85, 88.

[9] *United States v. Rogers* (7th Cir. 1973), 475 Fed. 2d 821, 828, stating: ". . . [P]rejudice requiring severance is not shown if evidence on the severed count would be admissible in the trial of the remaining counts . . . ."

[10] *McDonald v. State* (Del. 1973), 307 Atl. 2d 796, 798.

[11] *See: United States v. Williamson, supra,* footnote 3, at pages 511, 512; *Conte v. Cardwell* (6th Cir. 1972), 475 Fed. 2d 698, 700; *United States v. Lee* (6th Cir. 1970), 428 Fed. 2d 917, 921; *United States v. Weber, supra,* footnote 7, at pages 334, 335; *Bradley v. United States* (D. C. Cir. 1969), 433 Fed. 2d 1113, 1122, 1123; *Baker v. United States* (D. C. Cir. 1968), 401 Fed. 2d 958, 976, 977. As to situations where separate and distinct acts are involved, *see: Gregory v. United States* (D. C. Cir. 1966), 369 Fed. 2d 185 (joinder of two separate robbery charges); *Cross v. United States* (D. C. Cir. 1964), 335 Fed. 2d 987, 989 (joinder of charges for robbery of church rectory and tourist home nine weeks apart); and *Drew v. United States* (D. C. Cir. 1964), 331 Fed. 2d 85 (joinder for two charges of robbery two and one-half weeks apart).

Additionally, for balancing the public interest in joint trials against a claim of possible prejudice to a defendant, something more is needed than defendant's statement that he intends to testify on one charge and not on the other. The defendant, opposing consolidation or urging severance, is required to present enough information, including the nature of the testimony he wishes to give on one count that would not be admissible on the other count or counts, to enable the trial court to intelligently weigh the opposing factors to be weighed and balanced. This added requirement is termed the *Baker* rule,[12] and has been consistently followed in the federal courts,[13] and in state courts as well.[14] In the case before us, the defendant put onto the scales only his statement of intention to testify on one charge only, and the very generalized and conclusory statement that testimony by him on the one charge was essential and testimony by him on the other would be highly prejudicial. If no more than that were required, control as to consolidation or severance of charges would clearly pass out of the hands of the trial

[12] *Baker v. United States, supra,* footnote 11, the rule stated to be at page 977: ". . . [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information —regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other— to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."

[13] *United States ex rel. Tarallo v. LaVallee* (2d Cir. 1970), 433 Fed. 2d 4, 6; *Bradley v. United States, supra,* footnote 11; *Blunt v. United States* (D. C. Cir. 1968), 404 Fed. 2d 1283, 1289, certiorari denied (1969), 394 U. S. 909, 89 Sup. Ct. 1021, 22 L. Ed. 2d 221; *United States v. King* (D. C. Cal. 1971), 335 Fed. Supp. 523, 557.

[14] *Commonwealth v. Peterson, supra,* footnote 8, at page 195; *State v. Moore* (1973), 131 Vt. 149, 155, 303 Atl. 2d 141; *People v. Dodge* (1972), 72 Misc. 2d 345, 348, 349, 338 N. Y. Supp. 2d 690.

court and into the complete control of the defendant.[15] In this state the granting or denying of a motion for consolidation or severance as to trial is directed to the sound discretion of the trial court, and we find that here that discretion was not exceeded or abused.

*Requested instruction and verdict.*

Defendant requested that an instruction and verdict be given the jury of the lesser offense of endangering safety by conduct regardless of life, contrary to sec. 941.30, Stats. Endangering safety by conduct regardless of life is an included crime of attempted first-degree murder.[16] One of the elements of endangering safety is that the conduct involved ". . . was of such a character that it evinced a depraved mind, regardless of human life." [17] This court has held that such depravity is also present in first-degree murder and that ". . . the intent is the same except for the absence of the design to effect death." [18] However, the crime of endangering safety by conduct regardless of life ". . . does not require the specific intent to kill as does first-degree murder. . . ." [19] It does not follow that, because endangering safety by

[15] *Commonwealth v. Peterson, supra,* footnote 8, at pages 196, 197, stating: "If prejudice is held to erupt the moment a defendant asserts he wishes to testify on some but not all of the charges, then clearly control of severance has passed out of the hands of the trial court and into the control of the defendant. While the absolute right to severance is advocated in some quarters, it is not provided in either the state or federal rules. This Court has consistently ruled the grant or denial of severance is a matter for the trial court's discretion."

[16] *Thomas v. State* (1972), 53 Wis. 2d 483, 489, 192 N. W. 2d 864, citing *State v. Melvin* (1970), 49 Wis. 2d 246, 181 N. W. 2d 490, and *Holesome v. State* (1968), 40 Wis. 2d 95, 161 N. W. 2d 283.

[17] *State v. Dolan* (1969), 44 Wis. 2d 68, 73, 74 (footnote 2), 170 N. W. 2d 822, approving and adopting definition of elements of "endangering safety" crime in Wis J I—Criminal, Part II, 1345.

[18] *Id.* at page 73.

[19] *State v. Melvin, supra,* footnote 16, at page 253.

conduct regardless of life is a lesser-included offense of the crime of attempted first-degree murder, that it should have been submitted to the jury. As this court has said, ". . . to justify the submission for conviction of a lesser offense included in a greater crime there must be some reasonable ground in the evidence for a conviction of the lesser offense and an acquittal of the greater offense. . . ." [20] The key word is "reasonable." [21] If the evidence in one reasonable view would suffice to prove the guilt of the higher degree of crime beyond a reasonable doubt and if under a different but reasonable view the evidence would be sufficient to prove the guilt of the lesser offense beyond a reasonable doubt and also leave a reasonable doubt as to some element included in the higher degree but not in the lesser, the court could and should submit both degrees or offenses. [22] In the case before us, defendant's counsel contends that under a reasonable view of the evidence the jury could find that the defendant lacked the design to effect the death of the police officer when he pulled the trigger. As was said by this court in a case involving degrees of murder, ". . . The real question is whether that testimony could result in a reasonable doubt of his [defendant's] mental purpose to kill. . . ." [23]

In determining whether or not a reasonable view of the evidence supports a finding that defendant pulled the trigger without intent to effect the death of the police

[20] *Id.* at page 252.

[21] *State v. Bergenthal* (1970), 47 Wis. 2d 668, 675, 178 N. W. 2d 16, holding: "The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. . . ."

[22] *State v. Melvin, supra,* footnote 16, at pages 252, 253, citing and summarizing *Zenou v. State* (1958), 4 Wis. 2d 655, 668, 91 N. W. 2d 208.

[23] *Zenou v. State, supra,* footnote 22, at page 669.

officer, we do not seek to read his mind at the moment of the trigger-pulling.[24] Intent we have held, ". . . must necessarily be evidenced by the conduct of the actor and the circumstances surrounding the act. . . ."[25] We agree with the trial court that no different but reasonable view of the evidence in this case supports any conclusion other than that when the defendant pulled the trigger he must be held to have intended the death of the police officer. The weapon the defendant used was a loaded .44-caliber magnum revolver, the most powerful handgun in existence. The position of the revolver—about two inches from the lower stomach of the officer—is also material.[26] The evidence establishes that when the police officer opened the door of the van the defendant swung his gun toward the officer who attempted to push it away. The defendant overpowered the officer and brought the .44-caliber magnum revolver down to and about two inches from the officer's body. We have said that ". . . When one intentionally points a loaded gun at the vital part of

[24] *State v. Wells* (1971), 51 Wis. 2d 477, 483, 484, 187 N. W. 2d 328, this court stating: "Seldom is an intent to kill ascertainable from the lips of the intender. Never can it be established by a retroactive mind-reading effort to determine what the actor was thinking when he planned and executed the act. That would require a crystal ball that re-created the past rather than sought to peer into the future. So as an objective test to determine the subjective intent of the doer of a deed, the courts rely upon a presumption, well stated by this court to be: 'In the absence of evidence to the contrary, he who takes the life of another by the infliction of a wound naturally and probably calculated to produce death is presumed to have intended that result and to be guilty of murder in the first degree under our statutes. . . .' [Cases cited.]"

[25] *Nelson v. State* (1972), 53 Wis. 2d 469, 473, 193 N. W. 2d 5, citing *State v. Wells, supra,* footnote 24, and *State v. Vinson* (1955), 269 Wis. 305, 68 N. W. 2d 712, 70 N. W. 2d 1.

[26] *State v. Wells, supra,* footnote 24, holding, ". . . The lethal or death-dealing aspect of a particular weapon derives from the manner and circumstances surrounding its use as much as from its physical properties. . . ."

the body of another and discharges it, it cannot be said that he did not intend the natural, usual, and ordinary consequences. . . ." [27] Here the defendant clearly waited until he had the gun close to the officer's body before he pulled the trigger. Whether he first pulled back the hammer and then pulled the trigger (single action) or did both in one operation (double action) makes no great difference here. In either case the degree of pressure required and involved negatives any claim of accidental discharge during or after a struggle. We have here no case of unintended discharge or firing from a distance. [28] Given the lethal nature of the weapon, the closeness of the weapon to the body of the target, the deliberate positioning of the revolver, the vital part of the body aimed at, the pressure required to pull the trigger and the general circumstance of the defendant attempting to escape with the loot of the armed robbery, we conclude, as did the trial court, that no reasonable view of the evidence raises any reasonable doubt of defendant's intent or mental purpose to kill when he pointed, aimed and sought to fire the revolver. The almost miraculous intervention of defendant's cap falling between the hammer and firing pin appears all that prevented the likely bringing of a charge of first-degree murder instead of attempted first-degree murder. If the cap had not prevented the firing, the conviction might well have been for first-degree murder and, on this record, it would have been sustained.

*Additional claims of error.*

In his pro se brief defendant raises 19 additional claims of error. It would appear that defendant's court-appointed counsel did not include them in his brief for the reason that he considered them to lack merit or substance. If so, he was entirely correct. The additional claims of

[27] *Eckman v. State* (1926), 191 Wis. 63, 77, 209 N. W. 715.
[28] *See: State v. Melvin, supra,* footnote 16, and *Tucker v. State* (1973), 56 Wis. 2d 728, 202 N. W. 2d 897.

error relate to the arrest of the defendant, entry into his van, right to resist arrest, inherently incredible testimony, identification testimony, photographs of defendant's gun and hat, testimony as to footprints in the snow, the bindover and conduct of the trial, right to summon witnesses, and competency of trial counsel. Some of the claims of error are not supported by the record; some were waived by failure to raise objection at time of trial; none warrant reversal either as a matter of law or in the interest of justice. We do note that the final pro se argument refers to the trial court having summarily denied defendant's motion for postconviction relief after assigning the motion to an assistant district attorney for study, with the assistant prosecutor later reporting that he could find no merit in any of the contentions made by the defendant. It is clear that the trial court, after a review of all the files, proceedings and transcripts in the matter, summarily denied defendant's motion for postconviction relief. This is a procedure permitted by sec. 974.06, Stats., and authorized by *Peterson v. State.*[29] While more detailed findings could and should have been made,[30] the lack of arguable merit to the points raised warranted such summary disposition. However, while finding no procedural error or deficiency here, we do not encourage the assignment of members of the prosecutor's staff to review petitions for postconviction relief, certainly not if they are appointed as amicus curiae as authorized in *Peterson* and *Smith.*[31] Under different circumstances obvious hurdles and hazards would be encountered by a continuance of such practice or procedure.

*By the Court.*—Judgment and orders affirmed.

[29] *Peterson v. State* (1972), 54 Wis. 2d 370, 379, 380, 195 N. W. 2d 837. *See also: Smith v. State* (1973), 60 Wis. 2d 373, 378, 379, 210 N. W. 2d 678.

[30] *Smith v. State, supra,* footnote 29, at pages 383–385.

[31] *Id.* at page 378, providing: "It follows that it is '. . . incumbent upon the trial court to form its independent judgment after a

review of the record and pleadings and to support its decision by written opinion.' To assist in arriving at such independent judgment, the trial court may, as it did here, appoint an attorney as amicus curiae to study the record and to report to the court whether the motion and the record do or do not conclusively show that the petitioner is entitled to no relief. . . ." (Citing and quoting *Nelson v. State* (1972), 54 Wis. 2d 489, 497, 498, 195 N. W. 2d 629.)