KESSLER, P.J.
¶ 1 Brian A. Barwick appeals the judgments of conviction of eleven crimes charged in four cases, following a jury trial. The cases were consolidated for trial. Barwick also appeals the order denying his postconviction motion. We affirm.
BACKGROUND
¶ 2 Barwick was charged with eleven crimes, all involving his use of a computer or telephone for various prohibited purposes. Barwick was charged in four separate cases. We briefly discuss the charges and the facts underlying each case.
Case No. 2014CM4275
¶ 3 In Milwaukee County Circuit Court Case No. 2014CM4275, Barwick was charged with one count of unlawful use of a computerized communication system for sending a message using "obscene, lewd, or profane language" with the intent to "frighten, intimidate, threaten, or abuse another person." The complaint alleged that on October 7, 2014, Milwaukee police discovered that Barwick sent five emails to K.D., the guardian ad litem in Barwick's child custody case.[1] All of the emails were sent from the email address "brian-barwick@yahoo.com." The fifth email, which was the basis of the charge, stated:
My kids hear what you had to say; not through me and they hate you too. My 12 =year old should be able to testify against you asshole [K.D.]. He f* * * *ing hates you too. You should work with dead people. They ten to be more your style. I hate you. You have basically shown what you are about; and after my children found about you, they hate you too; Let's face it [K.D], you are an asshole that has been rejected by society. I have checked your school records, and you were an ass there too. You are a loser and should be working in a non public environment; Your should be confined to Alcatraz/ People like you should be lynched. I would also recommend that Judge Rosa have me d0 random drug and alcohol tests on you as well as asshole testes. YOu wiill faril I \FUCKING HATE YOU YOU MUTHERFUCKING ASSHOLE4. EAT MY SHT BASTARD! !@!@ yOU ARE A PIECE Of shit and the devil will get you. I will be there to set you on fire you FUCK ASS.
(Capitalization, spelling and punctuation in original.) As a condition of Barwick's bond, he was prohibited from having any contact with K.D.
Case No. 2015CF1521
¶ 4 In Milwaukee County Circuit Court Case No. 2015CF1521, Barwick was charged with two counts of knowingly violating a domestic abuse injunction and two counts of unlawful use of a computerized communication system with intent to frighten, intimidate, threaten, or abuse another person, while concealing identity. The charges stemmed from electronic messages sent to Barwick's ex-wife, R.B. The domestic abuse repeater penalty enhancer attached to the charges.
¶ 5 According to the criminal complaint, in March 2013, a court commissioner issued a domestic abuse injunction prohibiting Barwick from contacting R.B. On October 2, 2014, Barwick and R.B. both appeared in court for a hearing in their divorce. R.B. subsequently received two emails-one on October 2, 2014, after the hearing, and the other on October 5, 2014. The emails were sent from "JACK WALDEN longerone69in@gmail.com." (Underlining omitted.) The first email had the subject line "Court" and stated: "You are one stupid person. Brian was the best thing you ever had and you treated him like shit. You should be ashamed of yourself. and your mother is useless too." The second email had the subject line "you" and stated: "sae you thro blinds yesterday kjnow what you r doin. u being watched. will get you soon. know when and where you sleep. uyr time is comin." (Spelling and punctuation in original.)
¶ 6 R.B. believed the emails were from Barwick and reported them to Milwaukee police. Police executed search warrants for Barwick's known Yahoo email address as well as for the Google address. Information obtained from Yahoo and Google indicated the same IP address was used for both accounts.
¶ 7 As a condition of Barwick's bail/bond, the trial court prohibited Barwick from any computer use.
Case No. 2015CF3082
¶ 8 On July 28, 2015, an amended complaint charged Barwick with one count of stalking, one count of knowingly violating a domestic abuse injunction and one count of unlawful use of a computerized communication system with intent to frighten, intimidate, threaten, or abuse another person, while concealing identity. All counts were charged with the domestic abuse repeater penalty enhancer.
¶ 9 The complaint alleged that on February 26, 2013, the day Barwick and R.B. had a child custody hearing, Barwick left R.B. four voicemail messages in which he said, among other things: "I will fucking kill you.... I will hunt you down. I will kill you[ ]"; "you better fucking think again because I'm coming after you, you bitch[ ]"; and "you have not heard the last of it. Your ass is on the sling. I'm gonna fuck you up in every way I can imagine. And you better put fucking blins on the back doors because I guarantee I'm coming."
¶ 10 The complaint also alleged that on August 31, 2014, R.B. received a message on her Facebook account from "John Wheaton." The account name listed for "John Wheaton" was "Jack.Walden.161." The message was a mix of gibberish and misspelled words, stating, as relevant: "y9u will be punishekd we watcuh thru wqindows ... we will git uy ... we kill you[.]" (Spelling in original.) Police executed a warrant for the Facebook account. Subsequent information revealed that the Facebook messages were sent from the same IP address as Barwick's known email.
Case No. 2015CF4127
¶ 11 On September 10, 2015, Barwick was charged with three counts of felony bail jumping for using a computer on three separate dates in violation of the conditions of his release in case No. 2015CF1521. According to the criminal complaint, S.M., a woman who claimed to have met Barwick on an online dating website, contacted police to report that Barwick was repeatedly calling her. She told police that Barwick contacted her online as well, using the email address zapp1965@aol.com, which was the email address for his online dating profile.
¶ 12 Police executed a search warrant for the AOL account and discovered that Barwick sent 344 emails originating from the same IP address. The emails were primarily sexual in nature. Three emails formed the basis of the charges. Two of the emails were sent to Craigslist users. In one of those emails Barwick inquired about purchasing used female underwear with a "hint of pee wipe" or "pussy hair trimmings." The third email was sent to the administrator of a dating website in which Barwick asked to have his account reinstated. When police executed a warrant for Barwick's home, they recovered multiple pairs of soiled women's underwear and a bag containing pubic hair trimmings.
¶ 13 All four cases were consolidated for trial. Barwick moved to sever two of the cases.[2] The trial court denied the motion. Ultimately, the jury convicted Barwick on all counts. The cumulative sentence on all charges was seven years of initial confinement and seven years of extended supervision. Postconviction, Barwick moved for relief on numerous grounds. The postconviction court denied the motion on all grounds. Barwick asserts numerous errors on appeal. For the reasons we explain below, we affirm.
¶ 14 Additional facts will be included as relevant to the discussion.
DISCUSSION
¶ 15 On appeal, Barwick raises numerous issues. He argues that: (1) there was insufficient evidence to convict him of one count of unlawful use of a computerized communication system in case No. 2014CM4275 (the email to K.D.); (2) there was insufficient evidence to convict him of three counts of felony bail jumping; (3) there was insufficient evidence to support the domestic abuse repeater penalty enhancers for the counts in which R.B. was the victim; (4) the search warrants executed for Yahoo, Google, AOL, and Facebook were invalid; (5) police unlawfully seized noncomputer related items from his home; (6) the trial court denied Barwick his constitutional right to present a defense by precluding Barwick from testifying that his computer may have been hacked; (7) the two cases in which R.B. was the victim should have been severed from the other cases; (8) trial counsel was ineffective for multiple reasons; and (9) the plain error doctrine requires that Barwick receive a new trial. We address each issue.
I. Sufficiency of the Evidence
¶ 16 "When a defendant challenges a verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State." State v. Long , 2009 WI 36, ¶ 19, 317 Wis. 2d 92, 765 N.W.2d 557. Whether the evidence is direct or circumstantial, this court "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." See State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." Id.
A. Case No. 2014CM4275
¶ 17 In case No. 2014CM4275, the jury convicted Barwick of one count of unlawful use of a computerized communication system, in violation of WIS. STAT. § 947.0125(2)(c) (2013-14),[3] for an email sent to K.D.
¶ 18 WISCONSIN STAT. § 947.0125(2)(c) (2013-14) provides:
Whoever does any of the following is guilty of a Class B misdemeanor:
....
(c) With intent to frighten, intimidate, threaten or abuse another person, sends a message to the person on an electronic mail or other computerized communication system and in that message uses any obscene, lewd or profane language or suggests any lewd or lascivious act.
¶ 19 Barwick argues that there was insufficient evidence for his conviction because: (1) "[t]he prosecution failed to adduce sufficient evidence to meet a constitutional standard that applies to obscenity and obscene language," and (2) the jury was neither instructed to consider whether the language was profane, nor did the prosecution meet the burden for proving profanity. In short, Barwick contends that the evidence was insufficient to show that the language in the email to K.D. was either obscene or profane.
¶ 20 Barwick relies on Miller v. California , 413 U.S. 15 (1973), to support his contention that the email did not contain obscene language. Miller was a challenge to a state's prohibition of the commercial public distribution of sexually explicit materials as obscene. Id. at 18-19. The court held that prohibition in a commercial context "must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." Id. at 24.
¶ 21 In more than forty years since the Miller tests were announced, the Wisconsin Legislature has chosen not to define obscenity for purposes of WIS . STAT. § 947.0125.[4] We conclude, therefore, that the legislature has clearly demonstrated its intent that jurors rely on their common understanding of the meaning of obscene as applied to § 947.0125. Moreover, § 947.0125(2)(c) contains an intent element-it prohibits the use of a computerized communication system with certain language for the purposes of frightening, intimidating, threatening, or abusing the recipient. See id .
¶ 22 Here, considering the ordinary definition of "obscene," and the language of the email to K.D., a jury could reasonably find Barwick's language to be "disgusting to the senses," "abhorrent to morality or virtue," or "repulsive by reason of crass disregard of moral or ethical principles."[5] A jury could also conclude that Barwick used such language with the intent to frighten, intimidate, threaten, or abuse K.D. The evidence was sufficient.[6]
B. Case No. 2015CF4127
¶ 23 Barwick contends that there was insufficient evidence to convict him of three counts of felony bail jumping in case No. 2015CF4127. As stated, the charges in that case stemmed from Barwick's use of his computer to send three emails. Barwick's use of a computer violated the conditions of his release in case No. 2015CF1521 (messages sent to R.B.). Barwick argues that the standardized bail/bond form in case No. 2015CF1521 did not impose "a bond 'term' that Barwick not use a computer," thus, there was insufficient evidence that Barwick actually violated a "term" of his release. We are not persuaded.
¶ 24 Barwick's sufficiency of the evidence argument fails, in part, because the bail/bond form from case No. 2015CF1521 was never introduced to the jury. The jury did, however, hear portions of the transcript from Barwick's initial appearance and his bail/bond hearing in that case. Milwaukee Police Officer James Fohr read portions from both hearings to the jury in which the trial court informed Barwick that a condition of his release required that Barwick have "no use of any computers." Accordingly, there was sufficient evidence for a jury to find that Barwick knew the conditions of his release and knowingly violated those conditions.
C. Domestic Abuse Repeater Penalty Enhancers in Case Nos. 2015CF1521 and 2015CF3082 (Conduct Toward R.B.)
¶ 25 Barwick argues that the State failed to produce evidence that Barwick engaged in a "physical act" of domestic abuse that would support the jury's finding that Barwick committed multiple acts of domestic abuse against R.B.
¶ 26 In the cases in which R.B. was the victim, Barwick was charged with seven crimes: three counts of knowingly violating a domestic abuse injunction, three counts of unlawful use of a computerized communication system with the intent to frighten, intimidate, threaten, or abuse another person while concealing identity, and one count of stalking. The domestic abuse repeater penalty enhancer attached to all of the charges. Barwick contends that the domestic abuse statute, WIS. STAT. § 968.075(1)(a), requires physical abuse and that his conduct did not meet the statutory requirement.
¶ 27 WISCONSIN STAT. § 968.075(1)(a) provides:
"Domestic Abuse" means any of the following engaged in by an adult person against his or her spouse or former spouse, against an adult with whom the person resides or formerly resided or against an adult with whom the person has a child in common:
1. Intentional infliction of physical pain, physical injury or illness.
2. Intentional impairment of physical condition.
3. A violation of [ WIS. STAT. §] 940.225(1), (2) or (3).
4. A physical act that may cause the other person reasonably to fear imminent engagement in the conduct described under subd. 1., 2. or 3.
(Emphasis added.) We disagree with Barwick's understanding of the term "physical act." Sending emails, leaving threatening voicemails, and sending Facebook messages clearly result from physical acts-Barwick physically picked up a material object (a phone) and left messages for R.B.; he physically wrote messages using another material object (a computer) and sent those messages to R.B. We construe statutes for the plain meaning of the words chosen by the legislature. See State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶¶ 44-45, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 28 We have previously held in two unpublished opinions that the acts of making phone calls and sending text messages constitute physical acts within the meaning of WIS. STAT. § 968.075(1)(a)4.See State v. Egerson , Nos. 2016AP1045-CR, 2016AP1046-CR, 2016AP1047-CR, 2016AP1048-CR, 2016AP1049-CR, unpublished slip op. (WI App Feb. 27, 2018); State v. Bandy , Nos. 2014AP1055-CR, 2014AP1056-CR, unpublished slip op. (WI App Oct. 28, 2014). We discern no relevant difference between emails, Facebook messages, text messages, and phone calls for the purposes of applying § 968.075.
II. Search Warrants for Yahoo, Google, Facebook, and AOL
¶ 29 Barwick contends that the search warrants for four internet corporations lacked probable cause and "[j]urisdictional [f]acts," rendering the warrants invalid and any information obtained as a result of the warrants to be inadmissible. We disagree.
¶ 30 WISCONSIN STAT. § 968.12(1) provides that a search warrant shall be issued "if probable cause is shown." See id. To support a determination that probable cause exists, the magistrate must be "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." State v. Higginbotham , 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) (citations and multiple sets of quotation marks omitted). In challenging the search warrant, Barwick bears the burden of establishing insufficient probable cause. See State v. Schaefer , 2003 WI App 164, ¶ 5, 266 Wis. 2d 719, 668 N.W.2d 760.
¶ 31 Here, each of the warrant requests was accompanied by an affidavit from Officer Fohr. All of Officer Fohr's affidavits described his reasons to believe that Barwick committed the crimes associated with each warrant request. The affidavit in support of the Yahoo warrant request described the threatening message to K.D. from an email address in Barwick's name, Barwick's denial that he owned the Yahoo account, and previous emails sent to K.D. from that account. The affidavit supporting the Google warrant request described emails sent to R.B., R.B.'s reason for believing Barwick sent the emails, and the history of domestic violence between Barwick and R.B. The affidavit supporting the Facebook warrant request described a threatening message sent to R.B. from an account named "Jack Walden"-a name that was previously connected to Barwick's IP address. Finally, the affidavit supporting the AOL warrant request described Officer Fohr's conversation with S.M., a woman Barwick met on an online dating site that Barwick connected to an AOL email address. We conclude that all of the warrant requests established probable cause.
¶ 32 As to Barwick's jurisdictional challenge, we conclude that the requirements of WIS. STAT. § 968.375(1) are met. The statute, titled "Subpoenas and warrants for records or communications of customers of an electronic communication service or remote computing service provider," provides:
(1) JURISDICTION . For purposes of this section, a person is considered to be doing business in this state and is subject to service and execution of process from this state, if the person makes a contract with or engages in a terms of service agreement with any other person , whether or not the other person is a resident of this state, and any part of the performance of the contract or provision of service takes place within this state on any occasion.
(Emphasis added.) Barwick contends that he did not "contract" with any of the service providers and that the State failed to prove that any of the communications took place in Wisconsin. First, the statute does not require a contract between a user and an electronic communications service provider-jurisdiction is satisfied if a user engages in a terms of service agreement. A judge granting a search warrant could reasonably infer that the providers required Barwick to enter terms of service agreements before creating his various accounts. As to Barwick's contention that the State failed to prove the messages originated in Wisconsin, Barwick again misconstrues the statute. Jurisdiction is satisfied if "any part of the ... provision of service" takes place in Wisconsin. See id. Logically, "provision of service" not only includes sending messages, but also the receipt of messages. K.D. and R.B. received their messages in Wisconsin. The AOL warrant affidavit includes assertions that Barwick was in Wisconsin while using his AOL account. Jurisdiction is satisfied.
III. Search Warrant for Barwick's Home
¶ 33 After S.M., a woman whom Barwick met online, notified police that Barwick was contacting her, police obtained a search warrant for Barwick's residence to seize computers or any other devices capable of accessing the internet. The warrant described Barwick's residence, including the exact location, entryways, and the structure of the home. During the search, police retrieved not only electronic items, but also multiple pairs of used women's underwear and baggies with pubic hair trimmings. Barwick was subsequently charged with three counts of felony bail jumping stemming from computer usage discovered after the search. Barwick's counsel moved to suppress the nonelectronic items but the trial court denied the motion. Barwick argues that the items should have been suppressed because the warrant to search his home was invalid and because the seized items did not relate to the electronic items that the warrant authorized.
¶ 34 Like Barwick's previous search warrant challenge, we note that the warrant was based on probable cause to believe that Barwick committed the crime of felony bail jumping. The warrant was supported by an affidavit from Officer Fohr in which he described his communications with S.M.
¶ 35 As to Barwick's argument that the noncomputer related items should have been suppressed, we conclude that the trial court properly admitted the evidence. The decision to admit or exclude evidence is within the sound discretion of the trial court. See State v. Warbelton , 2009 WI 6, ¶ 17, 315 Wis. 2d 253, 759 N.W.2d 557. The trial court found that the disputed items were discovered during the execution of a valid search warrant within the premises described in the warrant and that the items served as a connection between the criminal activity (bail jumping) and the evidence (emails). We agree.
¶ 36 The warrant described Barwick's home and sought to search the entire premises. A majority of the emails retrieved from the seized electronic items were sexual in nature, including an email describing Barwick's interest in obtaining the very items found in his home. Police also discovered that the emails were sent from Barwick's residence after the conditions of his bond/bail had been established in case No. 2015CF1521. The trial court properly admitted the evidence. See State v. LaCount , 2008 WI 59, ¶ 39, 310 Wis. 2d 85, 750 N.W.2d 780 (holding that when a warrant authorizes the search of a premises, "police [are] entitled to search the entire premises, including the items within the premises, so long as such items [searched are] 'plausible receptacles of the objects of the search' ") (citation omitted). Here, drawers to which Barwick had access are " 'plausible receptacles' " of computer-related equipment or evidence. See id . (citation omitted). The items seized included the very items solicited from Barwick's IP address.
IV. Barwick's Right to Present a Defense
¶ 37 Barwick contends that the trial court denied him his constitutional right to present a defense in case No. 2015CF4127 (bail jumping) by prohibiting him from testifying that: (1) the emails at issue could have been generated from outside sources, a practice known as "spoofing"; (2) Barwick observed activity on his computer during the times relevant to the charges that appeared to be generated from outside sources, i.e., he was "hacked"; and (3) Barwick lost a file folder containing computer passwords and identifiers that could have allowed third parties to access his computers.
¶ 38 At a hearing on the State's motion to exclude Barwick's testimony, Barwick's counsel told the trial court that Barwick would testify that on October 2, 2014, Barwick logged out of his computer but then saw that his computer had independently logged back in and Barwick saw the curser moving on the computer screen on its own. In other words, Barwick would testify that he was "spoofed" and/or "hacked." The State argued that Barwick's proposed testimony was speculative, as the State had not received any reports of such activity or the names of any expert witness qualified to testify about "spoofing" or "hacking." The State also noted that there was no evidence supporting Barwick's claims and told the court that Barwick had an opportunity to obtain an independent forensic examination of his computer.
¶ 39 Defense counsel responded that the allegedly hacked hard drive was destroyed and that the analyzed hard drive was not the same as the one on which Barwick observed suspicious activity. Counsel also told the trial court about another alleged hacking incident on the destroyed hard drive and about a file folder with sensitive information that had gone missing after Barwick moved out of his family home.
¶ 40 The trial court excluded Barwick's proposed testimony, noting that the testimony was speculative and irrelevant. The court also found that Barwick failed to provide any expert witnesses who could testify about the ways in which a computer could be compromised or establish that Barwick's computer was compromised. Barwick now claims that the court's ruling denied him his constitutional right to present a defense.
¶ 41 The decision to admit or exclude evidence rests within the sound discretion of the trial court, which we will not overturn absent an erroneous exercise of discretion. See State v. Novy , 2013 WI 23, ¶ 21, 346 Wis. 2d 289, 827 N.W.2d 610. When the exclusion of evidence implicates a defendant's constitutional right to present a defense, however, the decision not to admit the evidence presents a question of constitutional fact that this court reviews de novo . See State v. Wilson , 2015 WI 48, ¶ 47, 362 Wis. 2d 193, 864 N.W.2d 52.
¶ 42 We are not persuaded that the exclusion of Barwick's proposed testimony violated his right to present a defense. First, the evidence was only marginally relevant, at best. As the trial court noted, Barwick's testimony that there was suspicious activity on his computer at some vague point in time would only invite speculation among the jury as to whether that activity resulted in the messages at issue here. Barwick's testimony that he lost a folder containing sensitive information is also both vague and speculative. The jury would have to speculate to conclude that the folder was somehow recovered by an unknown party who then remotely broke into Barwick's computer and sent the messages underlying the charges here. More importantly, however, Barwick sought to testify about the technical ways his computer might have been compromised without establishing any special expertise to support such possibilities. Barwick neither claimed to be an expert in the field of computer science, nor provided any experts who could explain the concepts of "spoofing" and "hacking" and how either could have resulted in the messages at issue here. The constitutional right to present a defense does not extend to the right to present irrelevant or speculative testimony. See State v. Jackson , 188 Wis. 2d 187, 196, 525 N.W.2d 739 (Ct. App. 1994).
V. Severance
¶ 43 Barwick next argues that the trial court erred in denying his motion to sever the consolidated cases. Specifically, he contends that case Nos. 2014CM4275 (email to K.D.) and 2015CF4127 (bail jumping) should have been tried separately from the cases in which R.B. was the victim. Barwick contends that the consolidation of the cases was prejudicial.[7]
¶ 44 As to case No. 2014CM4275, Barwick claims that he was prejudiced by its joinder with the other cases because he was compelled to admit that he emailed K.D. multiple times using the email address "brian-barwick@yahoo.com" prior to sending K.D. the email at issue. He contends that if the case was severed, he may not have testified and the jury may not have heard the incriminating testimony. Barwick's assertion of his possible conduct and his speculative argument ignore other evidence in the record.
¶ 45 First, Barwick does not state that he would not have testified if the case was severed, but only that he may not have testified. Moreover, Barwick's testimony admitting use of the Yahoo email address was not the only evidence linking him to that particular email account. R.B. testified that Barwick used that particular email address and evidence obtained from Yahoo itself linked Barwick to that account.
¶ 46 As to case No. 2015CF4127 (felony bail jumping), Barwick argues that if the case was severed, he would not have had to testify that he was aware of his computer usage prohibition. When "balancing the public interest in joint trials against a claim of possible prejudice to a defendant, something more is needed than defendant's statement that he intends to testify on one charge and not on the other." Holmes v. State , 63 Wis. 2d 389, 398, 217 N.W.2d 657 (1974), abrogated on other grounds by State v. Salinas , 2016 WI 44, 369 Wis. 2d 9, 879 N.W.2d 609. The party opposing consolidation "is required to present enough information, including the nature of the testimony he [or she] wishes to give on one count that would not be admissible on the other count or counts, to enable the trial court to intelligently weigh the opposing factors to be weighed and balanced." Holmes , 63 Wis. 2d at 398. Barwick has done neither.
¶ 47 Barwick has not identified "something more" than his argument that he may not have testified. See id. Nonetheless, whether Barwick might have testified is irrelevant as there was other evidence indicating Barwick was aware of the conditions of his release. Officer Fohr read portions of transcripts from two hearings in which the trial court directly and explicitly told Barwick to stay away from computers. The cases were appropriately joined.
VI. Ineffective Assistance of Counsel and Plain Error
¶ 48 Barwick raises numerous ineffective assistance of counsel claims, none of which we discuss because they concern matters already addressed in this opinion. We therefore conclude that those arguments are meritless for the same reasons we rejected them above. See State v. Cummings , 199 Wis. 2d 721, 747 n.10, 546 N.W.2d 406 (1996) ; State v. Harvey , 139 Wis. 2d 353, 380, 407 N.W.2d 235 (1987) (Counsel is not ineffective for failing to pursue meritless issues.).
¶ 49 Finally, Barwick contends that his convictions should be reversed on the basis of the "plain error" doctrine. "The plain error doctrine allows appellate courts to review errors that were otherwise waived by a party's failure to object." State v. Jorgensen , 2008 WI 60, ¶ 21, 310 Wis. 2d 138, 754 N.W.2d 77. However, the error must be " 'obvious and substantial,' " and courts "should use the plain error doctrine sparingly." Id. (citation omitted). Here, Barwick baldly asserts that "[i]t cannot be concluded beyond a reasonable doubt that the errors of the trial court and trial counsel ... did not contribute to the verdicts in this case." We have already concluded that there was neither trial court error nor prejudicial trial counsel error in this case. Accordingly, the plain error doctrine is inapplicable.[8]
¶ 50 For the foregoing reasons, we affirm.
By the Court. -Judgments and order affirmed.
Not recommended for publication in the official reports.

Police discovered the messages while following up on messages Barwick sent to his ex-wife, R.B.

Barwick moved to sever case Nos. 2014CM4275 and 2015CF4127. We discuss the details of Barwick's severance requests in the "Discussion" section.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Wisconsin Stat. § 944.21(2) defines "obscene material" in the context of § 944.21(1) which explains that the statute is to "be used primarily to combat the obscenity industry[.]"

See Obscene , Merriam Webster Online , https://www.merriam-webster.com/dictionary/obscene (last visited July 26, 2018).

We need not reach the issue of whether the jury was properly instructed on the issue of profanity because the jury was not required to find the email profane-only whether the email was obscene, lewd, or profane. We have already concluded that there is sufficient evidence to find the email obscene.

We note that defense counsel withdrew the motion to sever 2014CM4275 and made an untimely request to sever 2015CF4127. In addition to his other arguments on the issue of severance, Barwick claims that these actions constituted ineffective assistance of counsel. Because we conclude that Barwick suffered no prejudice from the case consolidation, we do not address whether counsel was ineffective. See State v. Cummings , 199 Wis. 2d 721, 747 n.10, 546 N.W.2d 406 (1996) ; State v. Harvey , 139 Wis. 2d 353, 380, 407 N.W.2d 235 (1987) (Counsel is not ineffective for failing to pursue meritless issues.).

To the extent Barwick raises issues not addressed by this decision, we conclude that our resolution of the issues addressed is dispositive and that the record supports the trial court and the postconviction court.