COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1357**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV114

IN COURT OF APPEALS
DISTRICT III

UNEEDA REST, LLC,

    PLAINTIFF-APPELLANT,

  V.

RICK HEXUM,

    DEFENDANT-THIRD-PARTY PLAINTIFF,

  V.

JAKE WESTERHOF,

    THIRD-PARTY DEFENDANT-APPELLANT,

WISCONSIN MUTUAL INSURANCE COMPANY,

    THIRD-PARTY DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jake Westerhof and Uneeda Rest, LLC, appeal a summary judgment granted in favor of Wisconsin Mutual Insurance Company.  The circuit court concluded insurance policies that Wisconsin Mutual had issued to Westerhof did not provide coverage for Rick Hexum's claims against Westerhof and Uneeda Rest.  We agree that Wisconsin Mutual's policies do not provide coverage for two of the three kinds of property damage asserted by Hexum. However, the circuit court erred by concluding, as a matter of law, that the policies do not cover Hexum's claim for damage to his noneasement property.  We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2     Uneeda Rest is a limited liability company that owns property on Whitefish Lake in Sawyer County.  Westerhof and his siblings are members of Uneeda Rest.  Uneeda Rest's property is adjacent to property owned by Hexum. Uneeda Rest owns two easements allowing it to use an unpaved, shared driveway on the east side of Hexum's property to access its land.  Although the easements lie entirely within Hexum's property, it is undisputed that, at all times relevant to this

case, the shared driveway was actually located partially on Hexum's property and partially on Uneeda Rest's property.

¶3     At some point, Hexum constructed a "French drain" in the shared driveway, near the base of the concrete apron for his garage. Hexum testified a French drain is "an inexpensive way to drain water." He explained that it consists of a hole filled with rock, which allows "large volumes of water to filter through without puddling."

¶4     In 2015, Westerhof began construction of a new home on Uneeda Rest's property, which replaced a pre-existing cottage. Westerhof retained an architect to design the home and a general contractor to build it. The general contractor hired a subcontractor—Butterfield, Inc.—to complete the excavation work and install the foundation.

¶5     During the construction of Westerhof's residence, contractors drove over the shared driveway in order to access Westerhof's property. It is undisputed that the contractors' vehicles damaged the driveway and destroyed the French drain. Either Westerhof or one of his sisters ultimately paid to fix the damage to the driveway, but they refused to pay for the repairs to the French drain.

¶6     Hexum also permitted Butterfield to drive its construction vehicles over portions of Hexum's property that were not located within the easement in order to access the construction site. Hexum contends that in doing so, the vehicles damaged his noneasement property.

¶7     The construction of Westerhof's new home was completed in the early summer of 2016. The new home has a larger footprint than the old cottage. Westerhof testified he was aware before construction began that the larger footprint

3

of the new home would result in there being less permeable soil on his property. He also testified that he was aware the decrease in permeable soil would cause increased water runoff. However, Westerhof testified he believed the water would stay on his property because his house had gutters that emptied toward the lake and away from Hexum's property.

¶8    Hexum believes Westerhof's new house was constructed at an elevation that is approximately 1.5 feet higher than the elevation of the previous cottage. He also believes that the change in elevation has caused additional runoff onto his property. Westerhof, however, denies that the elevation has changed. Travis Butterfield (of Butterfield, Inc.) testified that the architect's plan for the new house called for the first floor to be constructed at an elevation of "1308.5," and that the elevation of the land before the house was constructed was approximately "1307" or "1308." Butterfield also testified that when he dug the foundation, he aimed for the elevation to be within two inches of the elevation specified on the plans.

¶9    In the spring of 2016, Hexum noticed an accumulation of water at the south end of the shared driveway, at the base of the concrete apron of his garage. Hexum contends this water accumulation damaged the concrete slab outside his garage, necessitating its replacement.

¶10   In 2018, Hexum constructed a drainage system that allegedly obstructed Uneeda Rest's easements. Uneeda Rest therefore filed the instant lawsuit against Hexum, seeking an injunction requiring Hexum to remove the drainage system. In response, Hexum filed a number of counterclaims against Uneeda Rest and a third-party complaint against Westerhof. As relevant to this appeal, Hexum alleged that the construction of Westerhof's home had caused damage to Hexum's

property. He asserted claims against Uneeda Rest for private nuisance, civil trespass, and negligence, among other things, and he asserted a civil trespass claim against Westerhof.

¶11 Westerhof and Uneeda Rest tendered the defense of Hexum's claims to Wisconsin Mutual, Westerhof's homeowner's insurer.[1] Wisconsin Mutual agreed to defend Westerhof and Uneeda Rest pursuant to a reservation of rights. It then moved to intervene in this lawsuit and to bifurcate and stay the merits of the case pending a determination of whether its policies provided coverage for Hexum's claims. The circuit court granted Wisconsin Mutual's motion.

¶12 Wisconsin Mutual subsequently moved for summary judgment and for a declaratory ruling that its policies did not provide coverage for Hexum's claims. First, Wisconsin Mutual argued its policies did not provide an initial grant of coverage because Hexum's alleged property damage was not caused by an "occurrence," as the policies defined that term. In the alternative, Wisconsin Mutual argued coverage for some of Hexum's claims was barred by the policies' "motorized vehicle" and "property you use" exclusions. Westerhof and Uneeda Rest opposed Wisconsin Mutual's motion, arguing that the policies provided an initial grant of coverage and that neither of the cited exclusions applied. Westerhof and Uneeda Rest also argued that a "collapse coverage endorsement" appended to the 2015-16 policy provided coverage for one of Hexum's claims.

¶13 The circuit court granted Wisconsin Mutual's summary judgment motion and issued an order declaring that its policies did not provide coverage for Hexum's claims. The court concluded the policies did not provide an initial grant

---

[1] Wisconsin Mutual had issued homeowner's insurance policies to Westerhof at all times relevant to this case. Uneeda Rest was listed as an additional insured on each of those policies.

of coverage because "the trucks moving down the [driveway], the building of the property, the house higher and changing the water runoff, all of those were purposeful acts, not an accident or occurrence as defined by the policy." The court did not consider whether either of the exclusions cited by Wisconsin Mutual were applicable, nor did it address the collapse coverage endorsement. Westerhof and Uneeda Rest now appeal.[2]

## DISCUSSION

### I. Standard of review

¶14 We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18). "Whether to grant a declaratory judgment is addressed to the circuit court's discretion." *State Farm Fire & Cas. Co. v. Acuity*, 2005 WI App 77, ¶6, 280 Wis. 2d 624, 695 N.W.2d 883. However, when the exercise of that discretion turns on the interpretation of an insurance

---

[2] At certain points in their appellate briefs, Westerhof and Uneeda Rest appear to suggest that the issue in this case is Wisconsin Mutual's duty to defend, and we should therefore restrict our analysis to the allegations within the four corners of Hexum's counterclaims and third-party complaint. As Wisconsin Mutual correctly observes, however, this is not a duty-to-defend case. Wisconsin Mutual provided a defense for Westerhof and Uneeda Rest pursuant to a reservation of rights, and it then successfully moved to bifurcate and stay proceedings on the merits of the underlying action pending a determination of coverage. "[T]he purpose of the four-corners rule has been served once the insurer has elected to provide a defense pending a final determination on coverage." *Olson v. Farrar*, 2012 WI 3, ¶34, 338 Wis. 2d 215, 809 N.W.2d 1. Under those circumstances, "[t]he four-corners rule is not further implicated, and the court proceeds to a determination of coverage," which includes the consideration of evidence extrinsic to the complaint. *Id.*, ¶¶34-35.

policy, which is a question of law, we independently review the court's decision. *Id.*

¶15    Our goal in interpreting an insurance policy is to give effect to the parties' intent. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65.  We construe a policy as it would be understood by a reasonable person in the position of the insured.  *Id.*  If policy language is unambiguous, we simply enforce it as written.  *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708.  When determining whether an insurance policy provides coverage for a particular claim, we first consider whether the policy's insuring agreement makes an initial grant of coverage.  *American Girl*, 268 Wis. 2d 16, ¶24.  If it is clear that the policy does not provide an initial grant of coverage, our analysis ends there, without the need to consider any of the policy's exclusions.  *Id.*

## II.  Initial grant of coverage

¶16    As relevant here, the Wisconsin Mutual policies provide an initial grant of coverage for "all sums for which an 'insured' is liable by law because of … 'property damage' caused by an 'occurrence' to which this coverage applies."[3]  On appeal, the parties agree that Hexum has asserted claims alleging three kinds of property damage: (1) damage to the French drain in the shared driveway; (2) damage to the concrete slab outside Hexum's garage, caused by the accumulation of water on the slab; and (3) damage to Hexum's noneasement

---

[3] Although some of the Wisconsin Mutual policies contain slightly different language, it is undisputed that each policy provides an initial grant of coverage for damages stemming from property damage caused by an occurrence.

property, caused by construction vehicles driving over that property. The critical issue, for purposes of determining whether the policies provide an initial grant of coverage for these claims, is whether any of the alleged property damage was caused by an "occurrence."[4]

¶17     The Wisconsin Mutual policies state that the term "occurrence" means "an accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period." The policies do not define the term "accident." However, previous cases have relied on dictionary definitions in order to ascertain the common meaning of that term. *See Everson v. Lorenz*, 2005 WI 51, ¶15, 280 Wis. 2d 1, 695 N.W.2d 298.

¶18     In *American Girl*, for instance, our supreme court noted that one dictionary defined "accident" as "an event or condition occurring by chance or arising from unknown or remote causes." *American Girl*, 268 Wis. 2d 16, ¶37 (citation omitted). The court also cited Black's Law Dictionary for the proposition that the term "accident" in a liability insurance policy means "an event which takes place without one's foresight or expectation." *Id.* (citation omitted). The definition in Black's further provided that "[a] result, though unexpected, is not an accident; the means or cause must be accidental." *Id.* (citation omitted). Applying these definitions, the *American Girl* court concluded the relevant property damage in that case—i.e., damage to a warehouse caused by soil settlement—was the result of an occurrence. *Id.*, ¶38. The court reasoned the soil settlement was caused by

---

[4] It is undisputed that not all of Hexum's claims against Westerhof and Uneeda Rest alleged property damage, as the policies define that term. On appeal, Wisconsin Mutual asserts— and Westerhof and Uneeda Rest do not dispute—that the Wisconsin Mutual policies do not provide coverage for any claims that do not allege property damage. Accordingly, we do not further address those claims.

"inadequate site-preparation advice," and "[n]either the cause nor the harm was intended, anticipated, or expected." *Id.*

¶19 The supreme court reached a different result in *Schinner v. Gundrum*, 2013 WI 71, 349 Wis. 2d 529, 833 N.W.2d 685. There, the insured held an underage drinking party, during which one guest suffered serious injuries after being physically assaulted by another guest. *Id.*, ¶2. The injured guest later sued the insured and his insurer. *Id.* The court held that these facts did not give rise to an occurrence because the insured's *intentional acts*—specifically, hosting a large underage drinking party and providing alcohol to an individual known to become belligerent when intoxicated—were a substantial factor in causing the plaintiff's injuries. *Id.*, ¶81. It did not matter that the insured did not intend for the plaintiff to be assaulted; what mattered was that the insured performed intentional acts that were a substantial factor in causing that result. *Id.*, ¶¶67-69. The *Schinner* court emphasized that in determining whether the plaintiff's bodily injury was caused by an accident, the focus was on identifying "the injury-causing event." *Id.*, ¶66. The policy's initial grant of coverage was triggered only if the facts showed that the injury-causing event was an accident. *See id.*, ¶¶66-69, 81.

¶20 Westerhof and Uneeda Rest argue that, in this case, because Hexum's counterclaims and third-party complaint alleged negligence, all of Hexum's claimed property damage must necessarily have been caused by an occurrence. We reject this argument because, for purposes of our analysis, it is the evidentiary facts concerning the causes of the alleged damages that matter, not the theory of liability alleged in Hexum's pleadings. Merely inserting an allegation of negligence into a complaint that alleges only damages caused by intentional acts does not create an occurrence, for purposes of insurance coverage. *See Talley v. Mustafa*, 2018 WI 47, ¶¶20, 32, 381 Wis. 2d 393, 911 N.W.2d 55.

9

¶21 Instead, we must analyze whether the evidentiary facts regarding each of Hexum's claimed items of property damage demonstrate that such damage was caused by an occurrence. Applying that analysis, we conclude the Wisconsin Mutual policies do not provide an initial grant of coverage for Hexum's claims asserting damage to his French drain or his concrete slab. In both of those instances, although the property damage itself may have been unexpected or unintended, the injury-causing event was intentional and was therefore not an accident—i.e., an occurrence.

¶22 As noted above, Hexum first claims that during the construction of Westerhof's new home, construction vehicles destroyed his French drain when driving over the shared driveway. During his deposition, Westerhof testified that he knew the contractors would have to drive heavy equipment over the shared driveway in order to reach the construction site. At the time of construction, Westerhof was unaware of the presence of the French drain immediately underneath the driveway. Nonetheless, Westerhof also testified that it "wasn't surprising to [him]" that the construction vehicles caused damage to the driveway, although it turned out to be "a bit bigger problem than [he] would have expected."

¶23 On these facts, we cannot conclude that the destruction of the French drain was caused by an occurrence. The contractors intentionally drove their vehicles over the shared driveway to access the construction site. Westerhof knew that they planned to do so, and he expected that their use of the shared driveway would damage the driveway to some extent. The fact that the full nature and extent of the damages to the driveway—including the destruction of the French drain lying immediately underneath the driveway—was unexpected does not mean that the damages resulted from an occurrence. Again, the focus of our inquiry is on whether the "injury-causing event" was accidental, not the resulting damages. *See Schinner*,

349 Wis. 2d 529, ¶¶66-69, 81; *see also American Girl*, 268 Wis. 2d 16, ¶37. Here, the operation of the heavy equipment on the driveway was intentional, not accidental, and it directly caused the destruction of the French drain.

¶24 Moreover, the destruction of the French drain in this case is distinguishable from the damage to the warehouse in *American Girl*. In *American Girl*, the cause of the damage was faulty site-preparation advice provided by a soil engineering subcontractor. That cause was accidental because, although the subcontractor intended to provide site-preparation advice, it did not intend to do so negligently. In this case, there has been no allegation or evidence presented that the contractors were negligent in their operation of heavy equipment on the shared driveway. Instead, as noted above, damage to the shared driveway was an expected consequence of the contractors' use of the driveway to access the construction site. Under these circumstances, the destruction of the French drain located in the shared driveway was not caused by an occurrence.[5]

¶25 We next turn to Hexum's claim for damage to the concrete slab outside his garage, which he contends was caused by the accumulation of water on the slab. Hexum claims the water accumulation was caused, in part, by the destruction of the French drain. However, we have already determined that the destruction of the French drain was not caused by an occurrence. Accordingly, any

---

[5] In the alternative, Wisconsin Mutual argues that the "property you use" exclusion applies to Hexum's claim for damage to the French drain. Because we conclude Wisconsin Mutual's policies do not provide an initial grant of coverage for Hexum's claim for damage to the French drain, we need not address this alternative argument.

Wisconsin Mutual also argued in the circuit court that the "motorized vehicle" exclusion applied to bar coverage for any claim alleging damage caused by construction equipment. The court did not address the "motorized vehicle" exclusion, and Wisconsin Mutual does not raise any argument regarding that exclusion on appeal. We therefore do not address it further.

damage to the concrete slab due to water accumulation that resulted from the destruction of the French drain was similarly not caused by an occurrence.

¶26    Hexum also claims that the larger footprint of Westerhof's new home and its construction at a higher elevation than the pre-existing cottage resulted in water accumulation on the concrete slab. For purposes of these claims, the injury-causing event was the construction of Westerhof's new home. That construction, however, was not unexpected or unintended. As such, it does not constitute an occurrence.

¶27    Westerhof and Uneeda Rest cite *American Girl*, *Acuity v. Society Insurance*, 2012 WI App 13, 339 Wis. 2d 217, 810 N.W.2d 812, and *Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 2006 WI App 161, 295 Wis. 2d 556, 721 N.W.2d 704, in support of their argument that the damage to Hexum's concrete slab due to the construction of Westerhof's new home was caused by an occurrence. Those cases are distinguishable, however, because they each involved allegations that faulty workmanship or negligence led to the relevant property damage. *See American Girl*, 268 Wis. 2d 16, ¶38; *Acuity*, 339 Wis. 2d 217, ¶17; *Glendenning's*, 295 Wis. 2d 556, ¶6.

¶28    Conversely, we agree with Wisconsin Mutual that, in this case, there is no evidence that "something went wrong in the construction of the house that resulted in unexpected water issues." As noted above, Westerhof testified he was aware before construction began that the larger footprint of the new home would result in there being less permeable soil on his property, which would cause increased water runoff. In addition, Butterfield testified that the architect's plans called for the new house to be constructed at the same elevation as the elevation of the preconstruction land, and he also testified that he dug the foundation to be within

two inches of that elevation. On these facts, we agree with Wisconsin Mutual that the accumulation of water on Hexum's concrete slab was not the result of defective work but, rather, was caused by the intentional and volitional act of building Westerhof's new home according to the architect's plans and specifications.

¶29 Westerhof and Uneeda Rest also argue that ***Kalchthaler v. Keller Construction Co.***, 224 Wis. 2d 387, 591 N.W.2d 169 (Ct. App. 1999), supports their position that the damage to the concrete slab was caused by an occurrence. In ***Kalchthaler***, however, the court principally analyzed a new exception to the business risk exclusion in a standard form commercial general liability (CGL) insurance policy in a case involving leaking windows installed by a subcontractor. *Id.* at 390-91, 397. Although the court initially discussed the meaning of "accident" and "occurrence" in the CGL policy, it observed the parties had already stipulated that fifty percent of the damages were caused by the insured general contractor's negligence. *See id.* at 397. The court then stated, without further analysis, "[T]here is no question that an event occurred: the windows leaked. This is an accident. So we have property damage caused by an occurrence and the policy applies." *Id.* The ***Kalchthaler*** court did not consider or analyze whether the injury-causing event was an accident, as required by subsequent case law. *See **Schinner***, 349 Wis. 2d 529, ¶¶66-69, 81.

¶30 Westerhof and Uneeda Rest also rely on ***Wosinski v. Advance Cast Stone Co.***, 2017 WI App 51, 377 Wis. 2d 596, 901 N.W.2d 797. In that case, a jury concluded Advance Cast Stone's negligent installation of a concrete panel caused the panel to fail, resulting in several injuries and a death. *Id.*, ¶¶7, 10-12, 26. As explained above, however, there is no evidence in this case that something went wrong during the construction of Westerhof's new residence that caused an increased accumulation of water on Hexum's property. Rather, the evidence shows

13

that the house was constructed according to the architect's specifications. Again, the injury-causing event—i.e., the construction of the house—was intentional. In fact, Westerhof knew that the construction could cause increased water accumulation and runoff. We therefore reject Westerhof and Uneeda Rest's argument that any damage resulting from the accumulation of water on Hexum's concrete slab was caused by an occurrence.

¶31    Hexum also claims that he suffered property damage when construction vehicles drove over his noneasement property. Wisconsin Mutual argues its policies do not provide an initial grant of coverage for that claim because "the use of vehicles on Hexum's property was volitional, intentional, and not an 'accident.'" Westerhof and Uneeda Rest correctly observe, however, that "when an insured is seeking coverage, the determination of whether an injury is accidental under a liability insurance policy should be viewed from the standpoint of the insured." *Schinner*, 349 Wis. 2d 529, ¶52. Westerhof and Uneeda Rest then assert that, from their standpoint, any damage to Hexum's noneasement property was unexpected.

¶32    In support of this argument, Westerhof and Uneeda Rest note that Butterfield testified he "probably" could have completed all of his work without driving over Hexum's noneasement property. They also observe that there is no evidence Westerhof was aware that Butterfield had obtained Hexum's permission to drive vehicles over Hexum's noneasement property and, to the contrary, Butterfield expressly testified that he did not tell Westerhof about that agreement. In addition, Westerhof testified he was not aware that construction vehicles would need to travel over Hexum's noneasement property in order to access the construction site. Based on these facts, Westerhof and Uneeda Rest argue they could not have anticipated that Butterfield or any other contractor would operate

construction vehicles on Hexum's noneasement property, thereby causing damage to it.

¶33   We agree with Westerhof and Uneeda Rest that the evidence cited above, at the very least, raises a genuine issue of material fact as to whether the damage to Hexum's noneasement property was unexpected from Westerhof and Uneeda Rest's perspective.  In response to Westerhof and Uneeda Rest's argument, Wisconsin Mutual notes that even if Westerhof and Uneeda Rest were unaware that Butterfield intended to use Hexum's noneasement property to access the construction site, it is undisputed that *Butterfield* was aware of his own plan to do so.  Wisconsin Mutual then asserts that Butterfield was Westerhof's agent.  It further argues that, by virtue of that agency relationship, Butterfield's knowledge should be imputed to Westerhof for purposes of determining whether its policies provide coverage for Hexum's claim that he suffered property damage when construction vehicles drove over his noneasement property.

¶34   As Westerhof and Uneeda Rest correctly note in their reply brief, Wisconsin Mutual's agency argument is undeveloped.  Wisconsin Mutual simply asserts that Butterfield was Westerhof's agent, without discussing the legal standard for determining whether an agency relationship existed or explaining how the facts of this case fulfill that standard.  Moreover, as Westerhof and Uneeda Rest observe, Wisconsin Mutual did not raise its agency argument in the circuit court.  Generally, a respondent may raise any argument on appeal that would support the circuit court's ruling, even if that argument was not raised in the circuit court.  *See State v. Kiekhefer*, 212 Wis. 2d 460, 475, 569 N.W.2d 316 (Ct. App. 1997).  Here, however, Wisconsin Mutual's failure to raise its agency argument below means that it did not develop a factual record upon which we could determine, as a matter of first

impression, whether Butterfield was Westerhof's agent for the purposes of analyzing the available coverage under Wisconsin Mutual's policies.

¶35 For these reasons, we decline to hold, based on Wisconsin Mutual's agency argument, that Wisconsin Mutual's policies do not provide coverage for Hexum's claim for damage to his noneasement property. Instead, we conclude Wisconsin Mutual was not entitled to summary judgment regarding coverage for that claim because Westerhof and Uneeda Rest have demonstrated, at the very least, that there is a genuine issue of material fact as to whether the damage to the noneasement property was unexpected or unintended from their perspective. Accordingly, although we affirm the circuit court's determination that Wisconsin Mutual's policies do not provide an initial grant of coverage for Hexum's claims for damage to the French drain and concrete slab, we reverse the court's grant of summary judgment regarding coverage for Hexum's claim for damage to his noneasement property. We remand for further proceedings consistent with this opinion.

## III. Collapse coverage endorsement

¶36 In the alternative, Westerhof and Uneeda Rest argue that the collapse coverage endorsement appended to Westerhof's 2015-16 policy provides coverage for Hexum's claim for damage due to water accumulation caused by the collapse of the French drain. The collapse coverage endorsement provides, in relevant part:

> We extend your policy to cover the dwelling and other structures against loss caused directly or indirectly by earthquake, landslide or other earth movement. Also covered is damage caused by water below the surface of the ground which exerts pressure on, or flows, seeps or leaks through: (1) sidewalks, (2) driveways, (3) foundations, (4) walls (basement or otherwise), (5) doors, (6) windows or (7) any other openings in (1) through (4) above.

16

> This endorsement applies to your property during construction until occupied or until expiration of your policy, whichever occurs first, but not to exceed six months from the date of this endorsement or policy.

¶37 The collapse coverage endorsement does not provide coverage for any of Hexum's claims against Westerhof and Uneeda Rest because, on its face, the endorsement provides only first-party property damage coverage, not third-party liability coverage. The first sentence of the endorsement makes it clear that the endorsement covers damage to "the dwelling and other structures." The endorsement also expressly states that it "applies to *your* [i.e., Westerhof and Uneeda Rest's] property during construction." (Emphasis added.) Furthermore, there is no language in the endorsement stating that Wisconsin Mutual will pay damages that Westerhof and Uneeda Rest are legally liable to pay to a third party. After reading the collapse coverage endorsement, no reasonable insured could conclude the endorsement would provide coverage for third-party liability claims. We therefore reject Westerhof and Uneeda Rest's argument that the endorsement provides coverage for any of Hexum's claims in this case.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

17